UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

KA AND KM DEVELOPMENT, INC.,

Debtor.
_____/

CASE NO. 6:09-bk-06245-KSJ

CHAPTER 11

EMERGENCY HEARING REQUESTED

## DEBTOR-IN-POSSESSION'S EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL AND REQUEST FOR EMERGENCY PRELIMINARY HEARING

## AND

## CERTIFICATE OF NECESSITY OF REQUEST FOR EMERGENCY PRELIMINARY HEARING

**KA AND KM DEVELOPMENT, INC.** ("Debtor"), as debtor-in-possession, pursuant to 11 U.S.C. §§ 363(c)(2)(A) and 363(e) and Federal Rule of Bankruptcy Procedure 4001(b)(1), moves for authority to use cash collateral and requests an emergency preliminary hearing on the motion ("Motion"). In support, Debtor states as follows:

### Background

1. On May 6, 2009 ("Petition Date"), the Debtor filed a petition for reorganization under Chapter 11 of the Bankruptcy Code; no trustee has been appointed.

2. KA and KM is a Florida corporation formed on March 16, 2005. KA and KM was created to hold, develop, and sell the condo-hotel units ("Units") at the Villas at Lake Eve, a Condominium ("Lake Eve"), located at 12388 International Drive South, Orlando, Florida, 32821. The individual shareholders of KA and KM are Arti Kalidas, Vinod Kalidas, and Nirmaksee Kalidas.

3. Lake Eve consists of 176 one-, two- and three-bedroom units. The amenities include swimming pools, saunas, a fitness center, a restaurant, a sundry shop, business facilities, among others.

4. As of the Petition Date, none of the Units have sold. KA and KM owns 176 Units, the amenities and the majority of the personal property at Lake Eve.

5. Prior to the Petition Date, Arti Kalidas and Vinod Kalidas formed Eve Management Inc. ("Eve Management"). Eve Management was formed to manage Lake Eve's service operations on behalf of the Unit owners, including the Units owned by Debtor. In that capacity, Eve Management is responsible for *inter alia*, maintaining and operating a rental program for purposes of renting the Units to guests on behalf of the Unit owners.

6. Eve Management collects Lake Eve's rental proceeds. Based upon its current ownership interests, the Debtor currently receives 100 percent of Lake Eve's services and revenues.

7. Eve Management has the sole and exclusive right and obligation to manage and operate the Lake Eve. Eve Management performs sales and marketing, manages operations, maintains the property and performs accounting functions. The Debtor retains the authority to and responsibility to make major management decisions related to the operation of Lake Eve.

8. All of Lake Eve's revenue is collected by Eve Management and expenses related to the operation of the hotel are paid by Eve Management. Eve Management does not receive a percentage management fee but the principles of Lake Eve are paid $5000.00 pre month each by Eve Management for their services.

### Events Leading to Chapter 11 Filing

9. Since the height of the real estate bubble in 2005, Florida's real estate and tourism markets have seen losses on par with those of the Great Depression.

10. The Debtor completed construction in January of 2009, and a Certificate of Occupancy was issued on January 26, 2009.

11. Not surprisingly, the Debtor's business has been drastically affected by the downturn in the economy. Although the Debtor had contracts to sell 157 of the 176 units, the buyers, mostly overseas investors, were unable to obtain financing. Therefore, the Debtor has not completed a closing of a single a unit and has begun operating the property as a hotel.

12. In consideration of its business difficulties, the Debtor decided that reorganizing under Chapter 11 was in the best interest of all parties.

### Relief Requested

13. In its effort to successfully reorganize its business, it is essential that the Debtor continue, without interruption, operations which will require the use of funds on hand and funds to be received from Lake Eve revenue.

14. The funds Debtor seeks to use is comprised in whole or in part of funds on hand in its bank accounts and funds to be received from the operation of the hotel. ("Cash Collateral"). The Cash Collateral is subject to the Debtor's obligations to SunTrust and the corresponding lien. SunTrust is owed approximately $38,200,000.00 under a Construction Loan Agreement and Mortgage Note between the Debtor and SunTrust Bank, dated June 21, 2007 ("Loan"). The Construction Loan Agreement is secured by a Mortgage, Assignment of Rents and Leases and Security Agreement Dated June 1, 2007 recorded in OR Book 9315 Pg 3633 of the Public Records of Orange County, Florida. The Loan is also secured by a Collateral Assignment of Purchase and Sale Contracts, Deposits and Related Rights, dated June 21, 2007, recorded in OR Book 9315 Pg 3646 of the Public Records of Orange County, Florida and a Collateral Assignment of Contracts, Permits and Rights, dated June 21, 2007, recorded in OR Book 9315 pg 3657 of the Public Records of Orange County, Florida. On June 25, 2007, SunTrust filed

3

two UUC-1 financing statements with the Secretary of State for the State of Florida evidencing its security interest in among other assets, all of the rents, profits, issues and revenue of the real property.

15. As of the Petition Date, the Debtor has approximately $8,000 in its bank account and Eve Management has approximately $50,000.00 in its bank account.

16. The Debtor estimates that it will require the use of approximately $189,111.00 of Cash Collateral to continue to maintain operations for the next four weeks, and, depending on the month, a greater or lesser amount will be required each comparable period thereafter.

17. A budget showing estimated income and expenses for the Debtor for the next six weeks ("Budget") is attached hereto as **Exhibit A**.

18. As adequate protection for the use of the Cash Collateral, the Debtor proposes to grant a replacement lien to the same validity, extent, and priority as its prepetition lien.

19. If the Debtor is not permitted to use the Cash Collateral, it may be forced to halt operations, which would result in loss of the going concern value of the business and a reduction in the value of the estate's asses. Such a result would adversely affect the Debtor's creditors.

20. A copy of the proposed order authorizing use of cash collateral is attached hereto as **Exhibit B**.

### CERTIFICATE OF NECESSITY OF REQUEST FOR EMERGENCY PRELIMINARY HEARING

21. Operation of the Debtor's business requires incurring expenses on a daily basis.

22. The Debtor will be without funds to operate and meet expenses if an emergency preliminary hearing is not granted.

23. Guests, vendors, and employees have been at risk since the Petition Date and will continue to be at risk until a determination by this Court of the Debtor's right to use Cash Collateral.

24. The Debtor and its counsel were aware prior to the Petition Date that the use of Cash Collateral would be an immediate issue but could not seek the relief sought herein until the Petition Date; this Motion was filed one day after the commencement of this Case.

25. The Debtor estimates that approximately 15 minutes will be necessary for a hearing on this Motion.

26. The Debtor and counsel are prepared to appear on two hours' notice at a hearing to demonstrate that the request for an emergency hearing is not the result of the Debtor's or counsel's procrastination or lack of attention.

**WHEREFORE**, KA and KM Development, Inc., requests that this Court grant its request for an emergency hearing and its request for authority to use cash collateral and that this Court grant such other relief as is just and proper.

**RESPECTFULLY SUBMITTED** this 7th day of May 2009.

/s/Elizabeth A. Green
Elizabeth A. Green
Florida Bar No. 0600547
egreen@lseblaw.com
**LATHAM, SHUKER, EDEN & BEAUDINE, LLP**
390 N. Orange Ave., Suite 600
P. O. Box 3353 (32802-3353)
Orlando, Florida 32801
Telephone: 407-481-5800
Facsimile: 407-481-5801
Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

KA AND KM DEVELOPMENT, INC.,

Debtor.
_____/

CASE NO. 6:09-bk-06245-KSJ

CHAPTER 11

## Certificate of Service

I HEREBY CERTIFY that a true copy of the **DEBTOR-IN-POSSESSION'S EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL AND REQUEST FOR EMERGENCY PRELIMINARY HEARING** has been furnished either electronically, by facsimile and/or by U.S. First Class, postage prepaid mail to: KA and KM Development, Inc., Attn: Arti Kalidas, 8865 Commodity Circle, Suite 14B, Orlando, FL 32819; SunTrust Bank, c/o Denise Dell-Powell, Esq., Akerman Senterfitt, 420 S. Orange Avenue, Suite 1200, Orlando, FL 32801; the Local Rule 1007-2 as shown on the matrix attached to the original of this motion filed with the Court; and the U. S. Trustee, 135 W. Central Boulevard, Suite 620, Orlando, Florida 32801, this 7th day of May 2009.

/s/ Elizabeth A. Green, Esq.
Elizabeth A. Green, Esquire

Adrienne and Alan Jessop
160 Lower Shelton Road
Marston, Moretaine
Bedford, Bedfordshir, UK

Andrew and Lisa Bryant
Culver Farm Pennsylvania Ln
Tiptree, Colchester
Essex CO5 0UD, UK

Andrew Brown
50 Aldershot Road
Fleet
Hampshire GU51 3FT, UK

Canndy Wang
Room 3905
Two Exchange Square
8 Connaught Road
Central Hong Kong

Charles Fleming
c/o Peter R. McGrath
801 N. Magnolia, Ste. 317
Orlando, FL 32803

Chris and Sarah Oglethorpe
17 Cunningham Hill Road
St. Albans
Hertfordshire AL1 5BX, UK

David & Bernadette Futerman
22 The Ridgeway
London N3 2PH, UK

David and Kevin Bissett
9 Stoneyford Road
Dulerh, Co Meath Duleek
County Meath
IRELAND

Edward and Nikki Milner
80 Weston Park
London N8 9TB, UK

Gary Nicol and Diane Nicol
77 Braemar Crescent
Falkirk, Falkirk
Strilingshire FK2 9HD, UK

Ian Charles Matthews and
Marie Georgina
35 Ridgeway
Wargrave, Reading
Berkshire RG10 8AS, UK

Ian Peirce and Freda Peirce
7 Lake Road
Chandlers Ford, Eastleigh
Hants SO53 1E, UK

Josephine Jones
17 Kingswood Lane
Warlingham, Surrey CR6 9AE, UK

Martin and Wendy Southgate
30 Rosebery Road
Alresford
Hampshire SO24 9HQ, UK

Michael Davies
Apartment 25, Ethos Crt
City Road
Chester CH1 3AT

Philip and Jane Horner
9 Westbourne Gardens
Southport
Merseyside PR8 2EZ, UK

Robert and Susan Mann
Crossmead, Buttons Lane
West Wellow, Romsey
Hampshire SO51 6BR, UK

Stephen & Catherine Russell
45 Reay Avenue
East Kilbride, Glasgow
Lanarkshire G74 1QT, UK

Stephenand Gail Graham
The Paddock
Tilston, Malpas
Cheshire SY14 7DR, UK

Teresa & James F Rooney
82 Newry Road
Mayobridge, Co Down
NO IRELAND  BT34 2EU

Eve Management, Inc
8865 Commodity Circle
Suite 14B
Orlando, FL 32819

SunTrust Bank
c/o Denise Dell-Powell
Akerman Senterfitt
420 S Orange Ave, Ste 1200
Orlando, FL 32801

SunTrust Bank
Attn:  President
7455 Chancellor
Mail Code FL-ORL-9026
Orlando, FL 32809

Urban Thier Federer &
Jackson
200 S Orange Ave, Ste 2025
Orlando, FL 32801-3439

*Lake Eve Resort*
*Budget Worksheet 2009*

| opened Jan. 30, 2009 | May 3 - 9 | May 10 - 16 | May 17- 23 | May 24 - 30 | May 31 - Jun 6 | Jun 7 - 13 | Jun 14 - 20 | Jun 21 - 27 |
|---|---|---|---|---|---|---|---|---|
| Rooms Available | 1,232 | 1,232 | 1,232 | 1,232 | 1,232 | 1,232 | 1,232 | 1,232 |
| Rooms Sold | 350 | 400 | 700 | 950 | 828 | 756 | 900 | 1,008 |
| % Occupancy | 28.41% | 32.47% | 56.82% | 77.11% | 67.21% | 61.36% | 73.05% | 81.82% |
| ADR w/o Comps | 85.71 | 87.50 | 71.43 | 84.21 | 78.50 | 99.21 | 88.89 | 94.25 |
| REVPAR | 24.35 | 28.41 | 40.58 | 64.94 | 52.76 | 60.88 | 64.94 | 77.11 |
| **INCOME** | | | | | | | | |
| Rooms | 30,000 | 35,000 | 50,000 | 80,000 | 65,000 | 75,000 | 80,000 | 95,000 |
| Gift Shop | 32 | 36 | 63 | 86 | 48 | 44 | 53 | 59 |
| Food & Beverage Sales | 1,120 | 1,280 | 2,240 | 3,040 | 2,032 | 1,855 | 2,208 | 2,473 |
| Telephone | 13 | 15 | 27 | 36 | 22 | 20 | 24 | 27 |
| Other | 266 | 304 | 532 | 722 | 448 | 409 | 487 | 545 |
| **TTL INCOME** | 31,431 | 36,636 | 52,862 | 83,885 | 67,550 | 77,328 | 82,771 | 98,104 |
| **DEPT EXPENSES** | | | | | | | | |
| Rooms | 8,568 | 9,792 | 17,136 | 23,257 | 13,276 | 12,122 | 14,431 | 16,163 |
| Retail Shop | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Food & Beverage Sales | 989 | 1,130 | 1,978 | 2,685 | 1,668 | 1,523 | 1,813 | 2,031 |
| Telephone | 348 | 397 | 695 | 943 | 247 | 225 | 268 | 301 |
| **TTL DEPT EXPENSE** | 9,905 | 11,320 | 19,810 | 26,885 | 15,192 | 13,871 | 16,513 | 18,494 |
| % Of TTL Income | 31.5% | 30.9% | 37.5% | 32.0% | 22.5% | 17.9% | 19.9% | 18.9% |
| **DEPT PROFIT** | | | | | | | | |
| Rooms | 21,432 | 25,208 | 32,864 | 56,743 | 51,724 | 62,878 | 65,569 | 78,837 |
| Gift Shop | 32 | 36 | 63 | 86 | 48 | 44 | 53 | 59 |
| Food & Beverage Sales | 131 | 150 | 262 | 356 | 364 | 332 | 395 | 443 |
| Telephone | -334 | -382 | -668 | -907 | -225 | -206 | -245 | -274 |
| Other | 266 | 304 | 532 | 722 | 448 | 409 | 487 | 545 |
| **NET OPER PROFIT** | 21,526 | 25,316 | 33,053 | 57,000 | 52,358 | 63,457 | 66,259 | 79,610 |
| % Of TTL Income | 68.5% | 69.1% | 62.5% | 68.0% | 77.5% | 82.1% | 80.1% | 81.1% |
| **UNDIST. EXPENSES** | | | | | | | | |
| Sales & Marketing | 3,013 | 3,013 | 3,013 | 3,013 | 2,170 | 2,170 | 2,170 | 2,170 |
| Admin & General | 9,003 | 9,385 | 11,678 | 13,589 | 9,547 | 9,147 | 9,947 | 35,547 |
| Repairs & Main | 3,253 | 3,253 | 3,253 | 3,253 | 2,411 | 2,411 | 2,411 | 2,411 |
| Utilities | 3,163 | 3,615 | 6,326 | 8,585 | 4,916 | 4,489 | 5,344 | 5,985 |
| **TTL UNDIST.** | 18,430 | 19,264 | 24,269 | 28,439 | 19,044 | 18,216 | 19,872 | 46,113 |
| % Of TTL Income | 58.6% | 52.6% | 45.9% | 33.9% | 28.2% | 23.6% | 24.0% | 47.0% |
| **PROFIT BEFORE FIXED** | 3,096 | 6,052 | 8,784 | 28,561 | 33,314 | 45,241 | 46,387 | 33,497 |
| % Of TTL Income | 9.9% | 16.5% | 16.6% | 34.0% | 49.3% | 58.5% | 56.0% | 34.1% |
| **FIXED CHARGES** | | | | | | | | |
| Depreciation | 230 | 263 | 459 | 623 | 362 | 331 | 394 | 441 |
| Escrow Reserves | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Insurance - Building | 2,011 | 2,298 | 4,022 | 5,459 | 3,172 | 2,896 | 3,448 | 3,861 |
| Management Services | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Reservations Services | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| Taxes-Real Estate | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 |
| **TTL FIXED CHARGES** | 2,241 | 2,561 | 4,481 | 6,082 | 3,534 | 3,227 | 3,841 | 4,302 |
| % Of TTL Income | 7.1% | 7.0% | 8.5% | 7.3% | 5.2% | 4.2% | 4.6% | 4.4% |
| **NET PROFIT** | 855 | 3,491 | 4,303 | 22,479 | 29,780 | 42,014 | 42,546 | 29,195 |
| % Of TTL Income | 2.7% | 9.5% | 8.1% | 26.8% | 44.1% | 54.3% | 51.4% | 29.8% |

# EXHIBIT "A"

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:  CASE NO. 6:09-BK-06245-KSJ

KA AND KM DEVELOPMENT, INC., CHAPTER 11 CASE

Debtor.
_____/

## *PROPOSED*
## AGREED ORDER (I) AUTHORIZING THE USE OF CASH COLLATERAL AND (II) GRANTING ADEQUATE PROTECTION

**THIS MATTER** came before the Court on _____, 2009, at _____ a.m. upon the Debtor-in-Possession's Emergency Motion for Authority to Use Cash Collateral and Request for Emergency Preliminary Hearing (the "Cash Collateral Motion") (Dkt. #_____). At the hearing, counsel for KA and KM Development, Inc. (the "Debtor") and counsel for SunTrust Bank, a Georgia corporation ("SUNTRUST") indicated that they had reached an agreement, pursuant 11 U.S.C. § 363 and Fed. R. Bankr. P. 4001(b), with respect to the Debtor's continued use of Cash Collateral, which is subject to a perfected first-priority interest held by SUNTRUST. This stipulated Order ("Agreed Order" or "Approval Order") reflects the parties' agreement in connection with the Cash Collateral Motion.

The Debtor and SunTrust stipulate and agree as follows:

A.  **Procedural History**

1.  On May 6, 2009 (the "Petition Date"), KA and KM Development, Inc. ("KA and KM" or the "Debtor") filed a voluntary petition under Chapter 11, title 11, United States Code (the "Bankruptcy Code") in this Court.

2.  The Debtor continues to operate its business and manage its assets as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

**EXHIBIT "B"**

3. No trustee, examiner or official committee of unsecured creditors has been appointed or established in the Debtor's bankruptcy case.

**B. SunTrust's Claims**

4. Prior to the Petition Date, the Debtor and SUNTRUST entered into a series of loan transactions which are summarized in the Debtor's Cash Collateral Motion and incorporated herein.

**C. Cash Collateral Use**

5. The Debtor requires the use of the cash collateral upon which SUNTRUST holds a valid and perfected lien and security interest ("SUNTRUST's Cash Collateral"). Pursuant to the terms and conditions of this Stipulation and Agreed order, SUNTRUST has agreed to permit the Debtor to use SUNTRUST's Cash Collateral through _____, 2009 (which may be extended as provided herein) consistent with the budget (the "Budget") that is attached hereto as **Exhibit "B"** and is incorporated herein by this reference.

Based on the foregoing stipulations, the statements of counsel on the record, and the entire record before the Court, the Court

**ORDERS** as follows:

A. The Cash Collateral Motion is **GRANTED** subject to the terms and conditions contained in this Agreed Order.

> **Section 1. Preambles and Recitals.** The Debtor and SUNTRUST agree that the representations and recitals set forth in all the preceding paragraphs of this Stipulation and Agreed Order shall be deemed to be a part of this Agreed Order and are hereby deemed the Court's findings of fact subject to the rights of interested parties, other than the Debtor, and any creditors' committee pursuant to Section 2 of this Agreed Order.

**Section 2. <u>Investigation Period for Interested Parties and Any Creditors' Committee.</u>** As provided in this Court's Guidelines for Motions Seeking Authority to Use Cash Collateral and Motions Seeking Approval of Postpetition Financing, any challenge or objection to the validity, perfection and amount of SUNTRUST's liens and claims as set forth herein shall be properly filed and served (a) by any party in interest, other than the Debtor or any creditors' committee on or before September 16, 2008; and (b) by any creditors' committee within sixty (60) days of its formation. If no challenges or objections to the validity, perfection and amount of SUNTRUST's liens and claims as set forth herein are timely brought as provided in the preceding sentence, SUNTRUST shall be deemed to hold allowed secured claims as set forth herein. If a challenge or objection is timely filed by a party in interest, other than the Debtor, or any creditors' committee, SUNTRUST shall hold secured claims as provided in any further order entered upon such challenge or objection.

**Section 3. <u>Use of Cash Collateral; Budget.</u>** Subject to the terms and conditions of this Agreed Order, the Debtor is authorized to use SUNTRUST's Cash Collateral through _____, 2009 (the "Termination Date") to pay the ordinary and necessary operating expenses of its business in the amounts and solely for the purposes set forth in the Budget.

**Section 3.1. <u>Extension of Agreement.</u>** The time period set forth in the preceding paragraph shall not be extended without written consent of SUNTRUST or an Order of this Court.

**Section 3.2. <u>Budget Variations.</u>** Without prior approval of SUNTRUST, the Debtor is permitted to use Cash Collateral for a particular line item in the Budget so long as: (a) such variation is equal to or less than a 10% increase in the amount listed

in the Budget for such line item and (b) the total amount incurred during such applicable period does not increase.

**Section 3.3. Prohibited Uses of Cash Collateral.** Notwithstanding the items listed in the Budget, absent written consent of SUNTRUST or an Order of the Court, the Debtor shall not use the Cash Collateral: (a) to make any prepayments with respect to services which were not yet rendered, goods that have not been received, or any other item for which payment is not currently due, (b) to pay any increases in salaries or compensation for employees, other than increases in the normal course of business, or (c) to pay any part or portion of pre-petition claims (other than pre-petition wage claims as approved and Ordered by the Court) (the "Prohibited Uses").

**Section 4. Replacement Liens, Additional Liens, and Super-Priority Administrative Claim.**

**Section 4.1. Replacement Liens.** As adequate protection for its interest in SUNTRUST's Cash Collateral, the Debtor grants SUNTRUST, effective as of the Petition Date valid and effective replacement security interests in and liens (the "Replacement Liens") on all property of the Debtor to the same extent, and with the same priority, as the liens held by SUNTRUST on property of the Debtor as of the Petition Date (such collateral, collectively, with the proceeds and products of any and all of the foregoing, the "SUNTRUST Replacement Collateral"). No lien or security interest in any property of the Debtor granted or arising on or after the Petition Date shall be created or permitted to be *pari passu* with, or senior to, the liens and security interests of SUNTRUST in its prepetition collateral or the Replacement Liens, nor shall the Replacement Liens be altered by any plan. The grant of Replacement Liens hereunder shall be supplemental to the security interests and liens which SUNTRUST possesses pursuant to the Loan Documents.

4

**Section 4.2. Perfection of Replacement Liens.** The liens and security interests granted herein to SUNTRUST upon the SUNTRUST Replacement Collateral shall be deemed attached, perfected, and enforceable against the Debtor and all other persons including without limitation any subsequent Trustee (if appointed under Chapter 7 of the Bankruptcy Code), without the filing of any financing statements or other compliance with non-bankruptcy law. The Debtor shall, however, at SUNTRUST's request, execute and deliver any and all documents permitting such security interests to be filed or recorded with any appropriate agency or official. Any such filing or recording shall be deemed to have been filed or recorded on the date of the entry of this Order.

**Section 4.3. Additional Lien.** As additional adequate protection for its interest in SUNTRUST Collateral to the extent of any diminution in the value of SUNTRUST's Cash Collateral as of May 6, 2009, the Debtor grants to SUNTRUST a security interest and liens (the "Additional Liens") in and to all of its assets whether owned or existing as of the Petition Date or thereafter acquired or arising, and all proceeds, products, rents, revenues, or profits of such property, other than causes of action arising under 11 U.S.C. § 542 *et seq.* The Additional Liens shall be subject only to the liens, security interest, and assignments that were valid and perfected as of the Petition Date and shall be in addition to any security interests, liens, or rights of set-off existing in favor or SUNTRUST on the Petition Date. The Additional Liens shall be deemed attached, perfected, and enforceable against the Debtor and all other persons, including without limitation, any subsequent Debtor (if appointed under Chapter 7 of the Bankruptcy Code), without the filing of any financing statements or other compliance with non-bankruptcy law. The Debtor shall, however, at SUNTRUST's request, execute and deliver any and all documents permitting such

security interests to be filed or recorded with any appropriate agency or official. Any such filing or recording shall be deemed to have been filed or recorded on the date of the entry of this Agreed Order.

**Section 4.4 Adequate Protection Payments**. As further adequate protection for SUNTRUST for the diminution in the Cash Collateral resulting by and through Debtor's use thereof, upon the entry of the this Order, the Debtor shall pay to SUNTRUST _____ (___%) percent of its excess cash by the 5th day of June 2009 and the 5th day of each month thereafter. These payments shall be applied by SUNTRUST to the interest payment due for the month, with the remaining interest due for that month and each month thereafter, to be paid from the Interest Reserve Account.

**Section 4.5. Administrative Expense.** As further adequate protection for SUNTRUST for the extent of the use of Cash Collateral, SUNTRUST shall have *nunc pro tunc* as of the petition date an administrative expense claim pursuant to Sections 507(a)(2) and 503(b) of the Bankruptcy Code for the diminution in the Cash Collateral resulting by and through the Debtor's use thereof, subject to the payments to be made to SUNTRUST and described above in paragraph 4.4, a carve-out for United States Trustee fees.

**Section 5. Covenants.** As adequate protection for the use of SUNTRUST Collateral and the Cash Collateral, the Debtor agrees to fulfill or obey, as applicable, the following covenants.

**Section 5.1. Reporting.**

A. **Weekly Reports**. The Debtor shall provide to SUNTRUST no later than on Tuesday of each week (a) a report covering the preceding week ended Friday formatted as the Budget is formatted reporting actual receipts and expenditures as

6

compared to the budgeted receipts and expenditures; (b) a report reflecting the aging of the Debtor's accounts receivable, specifying the account debtor and balances owed; and (c) any other reports required under the terms of the Loan Documents including, but not limited to, a Borrowing Base Certificate. In addition, the Debtor shall provide the Audit and monthly and quarterly financial statements as required under the Loan Documents.

**B.     DIP Reports.** The Debtor shall provide SUNTRUST copies of any reports provided to the Office of the United States Trustee (the "U.S. Trustee") at the time such reports are filed with the Court in the Bankruptcy Case. If these reports contain information required under subpart A of this subsection, they may be provided in lieu thereof.

**Section 5.2.  Access/Inspection.** The Debtor shall permit any authorized representatives of SUNTRUST from time to time, upon 24 hours notice to the Debtor, and during normal business hours, to examine and copy all the records and books of, and visit and inspect the business premises of, the Debtor and/or to appraise the collateral of SUNTRUST at SUNTRUST's initial cost and expense but which costs and expenses, but SUNTRUST reserves the right to seek to add to the balance of the debt owed to SUNTRUST by Debtor. The Debtor shall also provide SUNTRUST with all documents and disclosures as required by the Loan Documents.

**Section 5.3. Insurance.** The Debtor shall procure and maintain such insurance as required by the U.S. Trustee. Any such insurance shall at all times name SUNTRUST as a loss-payee or additional-insured and the Debtor shall furnish evidence of such insurance promptly to SUNTRUST upon request.

**Section 6. No Waiver.** Nothing in this Stipulation and Agreed Order or in any other document or instrument contemplated to be delivered in connection herewith shall in

any way be deemed or construed in any manner to affect, impair, or diminish any rights SUNTRUST may have against any party obligated to SUNTRUST that is not a Debtor.

**Section 7. <u>Termination</u>.** The Debtor shall cease to use the Cash Collateral upon the occurrence of the Termination Date (as defined below), and shall not be permitted further use of Cash Collateral unless a further Order of this Court extending the Termination Date has been entered.

**Section 8. <u>No Agencies, Partnership or Joint Venture</u>.** Nothing in this Stipulation and Agreed Order shall be deemed or construed as in any way creating a relationship, including, without limitation, agency, partnership, joint venture or any other similar relationship, between SUNTRUST and any of the other parties hereto of any nature other than judgment creditor, judgment debtor, SUNTRUST, borrower, hypothecator and guarantor. The Debtor is not the agent, partner, or representative of SUNTRUST, and SUNTRUST is not the agent, partner or representative of the Debtor, and nothing in this Stipulation or Agreed Order or any of the documents contemplated to be executed in connection herewith shall be construed to make SUNTRUST liable to anyone for goods delivered or services performed or debts or claims accruing against the Debtor's bankruptcy estate.

**Section 9. <u>No Waiver; Cumulative Remedies</u>.** No failure on the part of either of SUNTRUST or the Debtor to exercise, and no delay in exercising, any right granted hereunder or in any of the documents evidencing SUNTRUST's Claims or applicable law shall operate as a waiver thereof, nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. The remedies provided herein are cumulative and may be exercised alternatively, simultaneously, successively or in any other manner as SUNTRUST in

its sole discretion shall see fit, and such remedies and are not exclusive of any remedies provided by law.

**Section 10. <u>Additional Documents: Further Assurances.</u>** The Debtor and SUNTRUST shall deliver any and all other instruments and documents, and shall do, and cause to be done, all such additional acts and things, as are reasonably necessary to and proper in order to give effect to, all of the terms and provisions of this Stipulation and Agreed Order.

**Section 11. <u>Severability.</u>** In the event any one or more of the words, phrases, sentences, clauses, sections or subsections contained in this Stipulation and Agreed Order or any part hereof, all of which are inserted conditionally on their being valid in law, shall be declared invalid, this Stipulation and Agreed Order shall be construed as if such word or words, phrase or phrases, sentence or sentences, section or sections, or subsection or subsections, had not been inserted.

**Section 12. <u>Section Headings.</u>** The section and other headings contained in this Stipulation and Agreed Order are for reference purposes only and shall not affect the meaning or interpretation of this Stipulation and Agreed Order.

**Section 13. <u>Successors and Assigns.</u>** This Stipulation and Agreed Order shall be binding upon the Debtor, its respective employees, agents and successors as applicable. This Stipulation and Agreed Order shall inure to the benefit of SUNTRUST's respective officers, directors, employees, agents, executors, administrators, predecessors, successors and assigns. The rights, duties, covenants and obligations of the Debtor hereunder shall not be assigned, delegated or transferred to any other person or entity. SUNTRUST shall be free to assign, transfer and delegate its rights, duties, and obligations hereunder. SUNTRUST's successors and assigns shall have all of its rights and remedies.

**Section 14. Entire Agreement.** This Stipulation and Agreed Order constitutes the entire agreement among the parties hereto with respect to the subject matter hereof and supersedes all prior agreements, understandings, negotiations and discussions, both written and oral, among the parties hereto, all of which are merged into this Stipulation and Agreed Order. Nothing herein is intended to supersede or annul any express written term or provision of any Order of the Court in the Bankruptcy Case entered prior to the date of the Approval Order.

**Section 15. Time of Essence.** Time is of the essence under this Stipulation and Agreed Order and each of the transactions contemplated to be consummated hereunder.

**Section 16. Modifications.** This Stipulation and Agreed Order may be no be amended or modified in any way except by a written instrument executed by all of the parties hereto, or by further of the Court.

**Section 17. No Reliance, Construction.** Each of the parties hereto hereby declares that, prior to the execution of this Stipulation and Agreed Order, they have apprised themselves of sufficient relevant data (including consultation with their respective counsel) in order that they might intelligently exercise their own judgments in deciding on the contents of this Stipulation and Agreed Order and whether to execute this Stipulation and Agreed Order. Each party hereto further declares that its decision to execute this Stipulation and Agreed Order is not predicated on or influenced by any declarations or representations not set forth in this Stipulation and Agreed Order, by any other person or party or any predecessors in interest, successors, assigns, officers, directors, employees, agents or attorneys of any said person or party. Each of these parties hereto hereby further acknowledges and agrees that each of them has had significant input in the development of this Stipulation and Agreed Order and this

Stipulation and Agreed Order shall not, therefore, be construed more strictly against any party responsible for its drafting.

**DONE AND ORDERED** on

---

KAREN S. JENNEMANN

United States Bankruptcy Judge

Order submitted by:

Copies provided to:
Elizabeth Green, Esq. (Proposed Counsel for Debtor)
Denise D. Dell-Powell, Esq. (Counsel for SunTrust Bank)
Local Rule 1007-2 Parties-in-Interest List