UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:  Case No. 6:09-bk-06245-KSJ

KA AND KM DEVELOPMENT, INC.,  Hearing Requested:
September 16, 2009 at 10:15 a.m.

Debtor.
_____/

**OFFICIAL UNSECURED CREDITOR COMMITTEE'S MOTION TO
TRANSFER CUSTODY (BUT NOT CONTROL) OF ITS
<u>CONSTITUENTS FUNDED ESCROW DEPOSITS</u>
(EXPEDITED HEARING REQUESTED)**

The Official Committee of Unsecured Creditors (the "Committee") of KA and KM Development Inc. (the "Debtor"), moves this Court, for an Order transferring from the custody of TitleConcepts, LLC, a Florida limited liability company (the "Escrow Agent") to the custody (but not control) of the Committee, its constituents funded escrow deposits and to retain such funds pending further Order of the Court. In support of this motion (the "Motion"), the Committee states as follows:

### <u>BASIS FOR EXPEDITED CONSIDERATION[1]</u>

**At issue is at least $7,294,312.88[2] controlled by the Debtor's Escrow Agent who represented to the Committee that these funds are fully protected because (i) all of the funds are insured through the Federal Deposit Insurance Corporation ("FDIC") program and (ii) the Escrow Agent is an approved agent of First American Title Insurance Company ("First American"). In stark contrast, upon information and belief, (i) the escrowed funds are held in a single bank account in the name of the Escrow Agent**

---

[1] Counsel for the Committee has previously discussed the relief sought with the Debtor, SunTrust Bank and the Escrow Agent.

[2] Amount in escrow as of July 29, 2009 according to the Summary Escrow Analysis prepared and voluntarily produced by the Escrow Agent, which total only includes interest calculated through February, 2009.

and thus are only insured by the FDIC up to the new depository limits of $250,000[3]; and (ii) the Escrow Agent is no longer an approved agent of First American[4]. In light of this severe economic recession and ongoing banking crisis[5] this status quo unnecessarily places the escrowed deposits, funded pre petition by the constituents of the KA Committee, ("Escrowed Deposits") at risk to the detriment of all of the competing interests to such funds.

## JURISDICTION AND BACKGROUND

1. This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§1408 and 1409. The statutory predicates for relief requested herein are 11 U.S.C. §§105(a), 1102, 1103 and a broad reading of 11 U.S.C. § 542.

2. On May 6, 2009, the Debtor filed a petition under Chapter 11 of the United States Bankruptcy Code. On June 26, 2009, the United States Trustee issued its *Notice of Appointment of Creditor's Committee* (DE# 67).

3. On August 10, 2009, the Committee hired the undersigned whose retention is pending before this Court.

4. The Debtor is a Florida for Profit Corporation and was a developer and seller of condominium properties located in Florida.

5. Pre petition, the unsecured creditors entered into "Contracts for Purchase and Sale" of condominium units to be developed by the Debtor. As part of these transactions, the unsecured creditors tendered deposits to be held in escrow ("Escrow Deposits").

---

[3] This amount was only temporarily increased last fall from $100,000.
[4] See letter dated September 2, 2009 from First American Title and attached hereto as Exhibit "A".
[5] According to the August 29, 2009 front page story in the *Wall Street Journal* "Banks on Sick List Top 400" there are 416 banks on the FDIC's watch list which is indicative that such bank is at a high risk of insolvency. This year over 90 banks have been shuttered. The dividend paid to uninsured depositors has dropped from $0.72 to $0.40, without factoring the recent takeover of BankUnited in May, 2009 and Colonial Bank last month, which represented the largest single bank failure this year.

6. Pursuant to the "Purchase Deposit Escrow Agreement," a copy of which is attached hereto as Exhibit "B," between the Debtor and Escrow Agent, 10% of the funds was to be held toward the ultimate purchase price, and amounts deposited in escrow over 10% (for the most part an additional 20%) were be utilized toward construction and held in a "Special Escrow Account".

7. The Escrow Deposits and Special Escrow Account deposits were placed in an account at SunTrust Bank ("SunTrust"). Beginning August 19, 2009, the Committee informally requested the bank statements from the Escrow Agent to determine the nature and status of the deposits, yet the Committee has not received the requested statements[6].

8. The Escrow Agent has been generally forthcoming. On August 21, 2009, during an interview, the Escrow Agent assured Committee counsel that the funds had additional protection since the Escrow Agent was an approved agent of First American. However, three weeks prior to this conference call, First American had already terminated the agency relationship. A copy of the September 2, 2009 letter from First American Title Insurance Company confirming the termination is attached hereto as Exhibit "A."

## COMPETING INTEREST

9. There are competing interests to the Escrow Deposits:

   A. Unsecured creditors who are the original source of the Escrowed Deposits assert an interest, which claims are also articulated in the various pending Adversary Proceedings filed in this matter;

   B. SunTrust asserts a perfected security interest as referenced in its Motion for Relief from Stay (DE# 89).

---

[6] See attached Exhibit "C".

C. The Debtor asserts an interest.

## RELIEF REQUESTED

10. Pursuant to 11 U.S.C. §1103, the Committee is authorized, among other things, to consult with the Debtor, investigate the Debtor, and perform such other services that are in the best interest of those represented.

11. The Committee seeks entry of an order to allow the Escrow Deposits to be relinquished to the custody of the Committee (but not its sole control) which funds will be (i) deposited in a manner to ensure full FDIC protection, (ii) held in interest being accounts and (iii) not disbursed absent further authorization of this Court.

12. The transfer of the Escrow Deposits would benefit all competing claimants as the funds would be fully insured, would be readily subject to accounting and audit, and all parties would avoid the unnecessary costs and fees of either ongoing retention by the Escrow Agent who wishes to relinquish control or the attendant expenses of utilizing the court registry.

13. The parties that have claimed competing interests in the Escrow Deposits would not be prejudiced by the granting of the relief requested since the Escrow Deposits would not be disbursed absent further Court Order. The Committee is not requesting that a determination of the competing interests be adjudicated at this time.

14. Under 11 U.S.C. §105(a) of the Bankruptcy Code, the Court may "issue any order . . . that is necessary or appropriate to carry out the provisions of this title." The Committee believes the relief requested herein is appropriate for

the Committee to fulfill its statutory function as contemplated by 11 U.S.C. §1103(c) of the Bankruptcy Code.

## CONCLUSION

WHEREFORE, the Committee requests that the Court direct the Escrow Agent to remit the Escrow Deposits to the custody (but not the sole control of) the Committee under the terms and conditions set forth in the Order and awarding such other and further relief as may be just and equitable.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished by either CM/ECF noticing or U.S. Mail to Attorney for Debtor: **Elizabeth A. Green, Esquire**, Latham Shuker Eden & Beaudine LLP, 390 N. Orange Avenue, Suite 600, Orlando, FL 32801; Debtor: **KA and KM Development, Inc.**, 8865 Commodity Circle, Suite 14B, Orlando, FL 32819; the **United States Trustee**, 135 W. Central Blvd., Room 620, Orlando, FL 32801; Jules Cohen, Suntrust, Akerman Senterfit, 420 South Orange Avenue, Orlando, Florida 32802 and Bill Porter, Counsel to Escrow Agent and to all parties listed on the **Unsecured Creditors Committee** (via email list serve) and the **Local Rule 1007-2** matrices this 14th day of September, 2009.

BROAD AND CASSEL
Proposed Attorneys for the Official
 Unsecured Creditors Committee
390 North Orange Avenue
Suite 1400
Orlando, Florida 32801
PO Box 4961 (32802-4961)
Phone: (407) 839-4200

By: _____/s/ Roy S. Kobert_____
  Roy S. Kobert, P.A.
  Florida Bar #: 777153
  rkobert@broadandcassel.com



**First American**
**Title Insurance Company**

*Dawn K. Rodriguez*
*Vice President*

September 2, 2009

Roy S. Kobert, P.A.
Broad & Cassel
390 North Orange Avenue
Suite 1400
Orlando, Florida 32801

Re: Title Concepts, LLC

Dear Mr. Kobert,

Please be advised that First American Title Insurance Company terminated our agency relationship with Title Concepts, LLC on August 4, 2009.

If you require any additional information regarding this matter, please contact the undersigned.

Sincerely,

Dawn K. Rodriguez

c: Larry Deal



EXHIBIT A

## PURCHASE DEPOSIT ESCROW AGREEMENT

THIS PURCHASE DEPOSIT ESCROW AGREEMENT ("Agreement") is made and entered into by and between **KA & KM Development, Inc.** (hereinafter referred to as "Developer") and TitleConcepts, LLC, (hereinafter referred to as "Escrow Agent").

### WITNESSETH:

WHEREAS, Developer is developing a Condominium to be known as **Villas at Lake Eve, A Condominium** on certain real property located in Orange County, Florida (hereinafter referred to as the "Condominium"); and

WHEREAS, Developer desires to make arrangements with Escrow Agent to hold all or a portion of certain deposit money (hereinafter referred to as "Deposit Money") received by Developer from purchasers of parcels ("Parcels") in the Condominium (such purchasers hereinafter are referred to as "Purchasers");

WHEREAS, Escrow Agent desires to consent to act as Escrow Agent for Deposit Money paid by Purchasers under Condominium purchase agreements (hereinafter referred to as "Contracts") entered into by Developer and Purchasers in accordance with the provisions of Florida Statute Chapter 718 (the "Act") and on the terms and conditions now about to be set forth;

WHEREAS, Escrow Agent is authorized to act as an escrow agent for Deposit Money received from purchasers of parcels in Condominiums established in accordance with the Act; and

NOW, THEREFORE, in consideration of the mutual covenants set forth herein and other good and lawful consideration, the receipt and sufficiency of which hereby are acknowledged, the parties hereto agree as follows:

1. Representations: The representations set forth above are true and correct and are incorporated herein by reference.

2. Establishment of Escrow: Escrow Agent hereby accepts its designation to act and serve as Escrow Agent for the sale of Parcels in the Condominium by Developer, subject to all of the rights and privileges appertaining thereto and subject to the obligations incident thereto. Developer and Escrow Agent do hereby establish an escrow for the purposes of receiving, holding, and disbursing funds as required under the Act. At the election of Escrow Agent, funds deposited into escrow may be deposited in separate accounts, or in a common escrow, or commingled with other escrow money received or handled by Escrow Agent (if and to the extent permitted under applicable provisions of the Act.)

3. Deposit of Funds: For such period of time as required under the Act, Developer shall deliver certain Deposit Money received by it to Escrow Agent under Contracts in the form of the Purchaser's check made payable to or endorsed to the escrow Agent, and Escrow Agent shall deposit only that Deposit Money into escrow. Simultaneously with the delivery of the Deposit Money, Developer shall deliver to Escrow Agent a schedule identifying the Deposit Money paid, the full legal name and mailing address of the Purchaser, information identifying the Parcel for which the Deposit Money is given, Purchaser's social security number, and any other information as Escrow Agent reasonably may require. Additionally, with regard to each individual purchase, any transmittal of Deposit Money from Developer to Escrow Agent shall describe whether the Deposit Money pertaining to a parcel is for the first 10% of the purchase price of the Parcel. The portion of the Deposit Money pertaining to a Parcel that exceeds 10% of the purchase price of that Parcel shall be held in a special escrow account ("Special Escrow Account"). Funds disbursed from the Special Escrow Account shall be used only for the actual construction and development of the Condominium and may not be used, in whole or in part, for salaries, commissions, expenses of salespersons, or for advertising purposes. Furthermore, funds from the Special Escrow Account may be disbursed only after construction of


EXHIBIT B

improvements has begun. Disbursements from the Special Escrow Account shall be made by Escrow Agent upon receipt of a written statement from Developer requesting those funds and stating that (1) construction of Condominium improvements has commenced, and (2) no portion of the funds to be disbursed shall be used, in whole or in part, for salaries, commissions, expenses of salespersons, or advertising purposes.

4. <u>Disbursement of Deposit Money</u>: Escrow Agent agrees to hold all Deposit Money in escrow subject to and in accordance with the following terms and conditions:

A) Until 15 days after Purchaser executes a Contract and receives from Developer all of the documents required to be furnished under the Act, Escrow Agent shall disburse applicable Deposit Money to Purchaser, together with any interest actually earned thereon, promptly on written request, by Purchaser or Developer, setting forth the information enabling Escrow Agent to determine the ability to so disburse in accordance with this subparagraph.

B) Subsequent to 15 days after Purchaser executes a Contract and receives all of the documents required to be furnished under the Act, Escrow Agent shall disburse applicable Deposit Money, together with any interest actually earned thereon, to Purchaser within five days after receipt of Developer's written certification that Purchaser properly has terminated the Contract.

C) Subsequent to 15 days after Purchaser executes a Contract and receives all of the documents required to be furnished under the Act, Escrow Agent shall disburse applicable Deposit Money to Developer within five days after receipt of Developer's written certification of the Purchaser's failure to cure a default in performance of Purchaser's obligations thereunder. Certification by Developer shall include: (a) Developer's statement that Purchaser has defaulted and that Developer has not defaulted; (b) a brief explanation of the nature of the default and the date of its occurrence; (c) a statement that Developer is entitled under the Contract to the funds held by Escrow Agent; and (d) a statement that Developer has not received from Purchaser any written notice of a dispute between Developer and Purchaser to a claim by Purchaser to escrow.

Notwithstanding the foregoing, in the event that before a closing, Escrow Agent receives written notice from Purchaser that there is a dispute between Purchaser and Developer, Escrow Agent shall notify Developer in writing and continue to hold the Deposit Money until it receives written instructions signed by both Developer and Purchaser concerning disbursement.

In the Event of a closing, Escrow Agent shall disburse to Developer the Deposit Money with respect to the Contract in accordance with Purchaser's authorization as contained in the Contract. Deposit Money shall be disbursed to Developer on receipt by Escrow Agent from Developer of written notice that the closing has been completed.

In addition to the above conditions and requirements, Escrow Agent shall, at any time, make disbursements of Purchaser's Deposit Money on: (1) written direction duly executed by Developer and Purchaser, or (2) an appropriate order of a court of competent jurisdiction.

At closing, interest earned on Deposit Money shall be paid to Developer unless the Contract provides otherwise, in which event the interest shall be paid to the appropriate party as may be provided by the Contract. If the schedule of information provided to Escrow Agent by Developer under paragraph 3 above fails to indicate that the interest is to go to the Purchaser, Escrow Agent shall presume that the interest shall accrue to Developer.

Notwithstanding anything contained herein to the contrary, Escrow Agent may, without further notice or authorization from any Purchaser on any Contract, transfer all Deposit Money received under this Agreement to another escrow agent who otherwise would qualify as a lawful escrow agent under the provisions of the Act; provided, however, that before the transfer, the substitute escrow agent executes an escrow agreement substantially the same as this Agreement, and the escrow

agreement is approved by the Division of Florida Land Sales, Condominiums, and Mobile Home ("Division"), as required by law.

Escrow Agent shall be responsible to provide monthly statements to Developer, which statements shall indicate: (1) the Deposit Money received for the Condominium and the Purchasers who made payment of the funds deposited; (2) the Deposit Money disbursed for the Condominium and to whom the Deposit Money was disbursed; and (3) the remaining balance of Deposit Money for the Condominium.

5. Investment of Deposit Money: Escrow Agent shall invest the Deposit Money in accordance with the Act. As of the date of this Agreement, the Act states that the Deposit Money shall be invested only by Escrow Agent in securities of the United States or an agency thereof or in accounts in institutions the deposits of which are insured by an agency of the United States. In the event the Act is amended to provide for different methods of investment other than described in the preceding sentence, Escrow Agent shall have the power, without Amendment to this Agreement, to invest the funds in accordance with any applicable Amendments to the Act. Developer shall advise Escrow Agent in writing from time to time of the method in which Developer desires the Deposit Money to be invested.

6. Compliance: Developer acknowledges that any willful failure to comply with the escrow provisions of Florida Statute 718.202 constitutes a criminal offense under Florida Statute 718.202(7).

7. Request for Refund Directly from Purchaser: In the event Escrow Agent receives a request for a refund directly from a Purchaser, Escrow Agent immediately shall forward a copy of the request to Developer. Developer shall have 20 days from receipt of the refund request to either (a) make a refund directly to the Purchaser, with a copy to Escrow Agent, or (b) notify Escrow Agent that Developer disputes that a refund is owed. If Developer does not respond to the refund request within 20 days, Escrow Agent shall forward to Developer its check, made payable to the Purchaser, in the amount of the refund due to the Purchaser, and Developer shall deliver the check to the Purchaser.

8. Separate Books and Records: Escrow Agent shall maintain separate books and records for the Condominium and shall maintain those books and records in accordance with good accounting practices.

9. General Obligations and Duties of Escrow Agent: Escrow Agent shall maintain the accounts called for in this Agreement only in a manner to be under the direct supervision and control of Escrow Agent. Escrow Agent shall maintain the escrow accounts provided for hereunder in accordance with good banking practices and release any funds held under this Agreement from escrow only in accordance with this Agreement and the Act. Escrow Agent shall maintain and retain all affidavits, monthly accountings, and reports received and issued under this Agreement and as provided in Florida Statute 718.202, as may be required by the Act and the Division. Escrow Agent shall deliver monthly statements to Developer satisfying the requirements of the paragraph above.

10. Responsibilities of Developer: Developer agrees that it shall, at all times, file all required documents with the Division and, at all times, comply with all terms and provisions of the Act and all other federal, state, and local regulations affecting the Condominium.

11. Disputes: In the event Escrow Agent shall receive conflicting demands for the escrowed funds or property, Escrow Agent immediately shall notify the Division of the dispute and shall either (1) with the consent of all parties, submit the matter to arbitration at the cost and expense of Developer and the applicable Purchaser, or (2) by interpleader, or otherwise, seek an adjudication of the matter by court proceeding. In the event of any dispute, or in the event of any litigation arising out of any of the terms or provisions of this Agreement, Escrow Agent shall be entitled to recover its reasonable Attorneys' fees and court costs at all trial and appellate levels.

12. **Terms of Agreement:** This Agreement shall remain in effect unless and until it is canceled in either of the following matters:

    A) On written notice given by Developer to Escrow Agent of cancellation of designation of Escrow Agent to act and serve in that capacity, in which event the cancellation shall take effect no later than 30 days after notice to Escrow Agent of the cancellation; or

    B) Escrow Agent may resign as Escrow Agent at any time on giving notice to Developer of its desire to resign; provided, however, that resignation by Escrow Agent shall take effect not sooner than 30 days after Escrow Agent gives notice of resignation unless a successor escrow agent has been designated sooner by Developer and all escrowed funds have been delivered to the successor escrow agent.

    C) On giving or receiving the notice of termination of the duties of Escrow Agent, in either manner described in paragraphs 1) or 2) above, Developer immediately shall designate a successor escrow agent, and immediately notify the Division, and Escrow Agent shall deliver within 10 business days thereafter any and all funds held by it in escrow and any and all contracts or documents and copies, if not the original, maintained by Escrow Agent to the successor escrow agent.

13. **Nonexclusive Agreement:** The parties hereto acknowledge and agree that nothing herein shall prohibit Escrow Agent from serving in a similar capacity on behalf of other Developers; provided, however, that any other escrow accounts maintained by Escrow Agent shall be maintained separately as distinct books and records for each project.

14. **Reliance by Escrow Agent:** Escrow Agent may act on any instrument or other writing believed by Escrow agent in good faith to be genuine and signed or presented by the proper person, and Escrow Agent shall not be liable in connection with the performance or non performance of its duties under the provisions of this Agreement, except for its own default or negligence, and it shall be under no obligation to institute or defend any action, lawsuit, or legal proceeding in connection herewith or to take any other action likely to result in any expense or liability being incurred by Escrow agent unless first indemnified.

15. **Indemnification:** Developer agrees to indemnify and hold Escrow Agent harmless against any and all losses, claims, damages, liabilities, and expenses other than those arising out of the negligence or misconduct of Escrow Agent, including reasonable costs of investigation, counsel fees, and disbursements that may be imposed on Escrow agent or incurred by Escrow agent in connection with its acceptance of its appointment hereunder or in the performance of its duties hereunder, including any litigation arising from this Agreement or involving the subject matter hereof.

16. **Inspection of Books and Records:** The Division retains the right, on providing Escrow Agent with reasonable notice, to inspect the books and records of Escrow Agent.

17. **Notices:** All notices, certificates, requests, demands, materials, and other communications hereunder shall be in writing and shall be deemed to have been duly given on the delivery thereof by hand to the appropriate addresses hereinafter set forth as evidenced by a signed receipt for same, or shall be considered given by mail on the date postmarked if mailed by first class mail, postage prepaid, or given telegraphically on the date transmitted from the place of origin.

Developer's Address:

1600 33rd Street, Unit 104
Orlando, FL 32839

Escrow Agent's Address:

TitleConcepts, LLC
55 East Pine Street
Orlando, FL 32801

Division's Address:

**DIVISION OF FLORIDA LAND SALES,
CONDOMINIUMS, AND MOBILE HOMES**
Northwood Centre
1940 North Monroe
Tallahassee, FL 32399-1033

18. Binding Agreement: This Agreement shall be binding on Developer and Escrow Agent and their successors and assigns.

19. Escrow Agent's Compensation: The compensation of Escrow Agent for the performance of its duties and obligations hereunder shall be as set forth in a separate agreement by and between the parties.

**IN WITNESS WHEREOF, Developer and escrow Agent have caused this Agreement to be executed in their respective corporate names by their undersigned authorized Officers and have caused their respective corporate seals to be affixed hereto on the dates and year noted below.**

DEVELOPER:

KA & KM Development, Inc.

Developer's Signature
Print Name: Vinod Kaidas
Executed on 1|25|07

ESCROW AGENT:

TitleConcepts, LLC

Escrow Agent's Signature
Print Name: William H. Litwin
Executed on 1/26/07

5

**From:** Roy Kobert
**Sent:** Wednesday, August 19, 2009 11:11 AM
**To:** 'Porter, Bill'
**Cc:** Troy Finnegan
**Subject:** KA escrow/Committee

Bill--

   I know you are swamped. My Secretary is coordinating with your office, a short call on Friday with your client and you. Before then, if your client could forward to me the latest bank statement (and the interest rate on the account) that would be helpful.

Roy

---

**From:** Roy Kobert
**Sent:** Tuesday, August 18, 2009 4:59 PM
**To:** 'Porter, Bill'
**Subject:** RE:

Thank you Bill.

As discussed, please send me draft motion and order to get you out of current role as stakeholder and transfer funds. Want to speak with your client on Friday for 5 minutes

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Please excuse any typos while I experiment with voice recognition software.

**Roy S. Kobert**
BOARD CERTIFIED BUSINESS BANKRUPTCY
390 NORTH ORANGE AVENUE
SUITE 1400
ORLANDO, FL 32801-4961
TELEPHONE: (407) 839-4200

BIO
DIRECT LINE: (407) 839-4269
DIRECT FACSIMILE: (407) 650-0927
E-MAIL: rkobert@broadandcassel.com



EXHIBIT C

BOCA RATON · DESTIN · FT. LAUDERDALE · MIAMI ·
ORLANDO · TALLAHASSEE · TAMPA ·
WEST PALM BEACH

www.broadandcassel.com

**From:** Porter, Bill [mailto:william.porter@lowndes-law.com]
**Sent:** Tuesday, August 18, 2009 3:56 PM
**To:** Roy Kobert
**Subject:**

Roy, here is the escrow agreement.

Bill


**L. William Porter III**
Lowndes, Drosdick, Doster, Kantor & Reed, P.A.
450 South Orange Avenue, Suite 800
Orlando, FL 32801
Phone: 407-843-4600
Direct: 407-418-6270
Fax: 407-843-4444
Email: bill.porter@lowndes-law.com
www.lowndes-law.com

```
Label Matrix for local noticing          Adrienne and Alan Jessop              Andrew Brown
113A-6                                   160 Lower Shelton Road                50 Aldershot Road
Case 6:09-bk-06245-KSJ                   Marston, Moretaine                    Fleet
Middle District of Florida               Bedford, Bedfordshir, UK              Hampshire GU51 3FT, UK
Orlando
Mon Sep 14 17:12:16 EDT 2009

Andrew James Bryant                      Andrew and Lisa Bryant                Canndy Wang
Culver Farm Pennsylvania Ln              Culver Farm Pennsylvania Ln           Room 3905
Tiptree Colchester                       Tiptree, Colchester                   Two Exchange Square
Essex CO5 0UD, UK                        Essex CO5 0UD, UK                     8 Connaught Road
                                                                               Central Hong Kong


Charles Fleming                          Chris and Sarah Oglethorpe            David & Bernadette Futerman
c/o Peter R. McGrath                     17 Cunningham Hill Road               22 The Ridgeway
801 N. Magnolia, Ste. 317                St. Albans                            London N3 2PH, UK
Orlando, FL 32803-3843                   Hertfordshire AL1 5BX, UK


David Bissett                            David and Kevin Bissett               Edward and Nikki Milner
9 Stoneyford Rd                          9 Stoneyford Road                     80 Weston Park
Duleek Co Meath                          Dulerh, Co Meath Duleek               London N8 9TB, UK
IRELAND                                  County Meath
                                         IRELAND


Gary Nicol and Diane Nicol               Ian Charles Matthews/Marie Georgina   Ian Peirce and Freda Peirce
77 Braemar Crescent                      35 Ridgeway                           7 Lake Road
Falkirk, Falkirk                         Wargrave Reading                      Chandlers Ford, Eastleigh
Strilingshire FK2 9HD, UK                Berkshire RG10 8AS UK                 Hants SO53 1E, UK


Josephine  Bernadette Jones              Martin Southgate                      Martin and Wendy Southgate
17 Kingswood Lane                        30 Rosebery Rd                        30 Rosebery Road
Warlingham, Surrey CR6 9AE, UK           Alresford                             Alresford
                                         Hampshire SO24 9HQ, UK                Hampshire SO24 9HQ, UK


Michael Davies                           Philip and Jane Horner                Robert Mann
Apartment 25, Ethos Crt                  9 Westbourne Gardens                  Crossmead, Buttons Ln
City Road                                Southport                             West Wellow, Romsey
Chester CH1 3AT UK                       Merseyside PR8 2EZ, UK                Hampshire SO51 6BR, UK


Robert and Susan Mann                    Stephen & Catherine Russell           Stephenand Gail Graham
Crossmead, Buttons Lane                  45 Reay Avenue                        The Paddock
West Wellow, Romsey                      East Kilbride, Glasgow                Tilston, Malpas
Hampshire SO51 6BR, UK                   Lanarkshire G74 1QT, UK               Cheshire SY14 7DR, UK


SunTrust Bank                            SunTrust Bank                         Teresa & James F Rooney
c/o Jules S Cohen                        c/o Michael A Nardella Esq            82 Newry Road
Akerman Senterfitt                       420 S Orange Ave Ste 1200             Mayobridge, Co Down
420 S Orange Ave Ste 1200                PO Box 231                            NO IRELAND  BT34 2EU
Orlando, FL 32801-4904                   Orlando FL 32802-0231


Title Concepts LLC                       United States Trustee                 End of Label Matrix
c/o L. William Porter III Esq            Elena Escamilla Trial Attorney        Mailable recipients    28
P.O. Box 2809                            US Dept of Justice                    Bypassed recipients     0
Orlando FL 32802-2809                    135 W Central Blvd  Suite 620         Total                  28
                                         Orlando  FL 32801-2440
```