# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

In re:

KA AND KM DEVELOPMENT, INC.,

Debtor.

CASE NO. 6:09-bk-06245-KSJ

CHAPTER 11

---

## AMENDED PLAN OF REORGANIZATION
## SUBMITTED BY KA AND KM DEVELOPMENT, INC.

COUNSEL FOR DEBTOR

ELIZABETH A. GREEN, ESQ.
JIMMY D. PARRISH, ESQ.
BAKER & HOSTETLER LLP
200 S. ORANGE AVE.
SUNTRUST CENTER, SUITE 2300
ORLANDO, FLORIDA, 32801-3432

FEBRUARY 25, 2010

In re:                                              **CASE NO. 6:09-bk-06245-KSJ**

**KA AND KM DEVELOPMENT, INC.,**            **CHAPTER 11**

Debtor.

---

## AMENDED PLAN OF REORGANIZATION
## SUBMITTED BY KA AND KM DEVELOPMENT, INC.

**KA AND KM DEVELOPMENT, INC.** ("KA and KM" or the "Debtors"), hereby

propose the following amended plan of reorganization (the "Plan"), pursuant to Chapter 11 of the

Code, 11 U.S.C. §101, *et seq.*

## ARTICLE I. - DEFINITIONS.

For the purpose of the Plan, the following terms will have the meanings set forth below:

**A Note** shall mean that note in the principal amount of $18,000,000 or such lesser

amount as SunTrust Bank decides secured by a first mortgage on the Real Property and a first

priority lien on the Cash Collateral among other collateral, which will earn interest at a rate equal

to the Bloomberg One Month LIBOR plus 300 points and will have a term of three years, with

an automatic one year extension if the reorganized Debtor is not in default on either the A Note,

the B Note, or any of its obligations to SunTrust Bank pursuant to the Mortgage Documents,

statute, this Plan, or other law.

**Administrative Claim** shall mean a Claim for payment of an administrative expense of a

kind specified in Section 503(b) of the Code and of a kind referred to in Section 507(a)(1) of the

Code, including without limitation, the actual, necessary costs, and expenses incurred. after the

commencement of the Bankruptcy Case, of preserving Debtor's estate and operating the business

of the Debtor, including wages. salaries or commissions for services, compensation for legal and other services and reimbursement of expenses awarded under Sections 330(a) or 331 of the Code, and all fees and charges assessed against the Estate under Chapter 123 of Title 28, United States Code.

**Administrative Claims Bar Date** shall mean the date by which all Administrative Claims must be filed with the Bankruptcy Court to be allowed. The Administrative Claims Bar Date will be established by the Bankruptcy Court as a specific date prior to the Confirmation Date.

**Affiliate** shall mean a person or entity that directly, or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, another person or entity, and includes: (1) a spouse, ancestor or lineal descendant of a person; (2) an officer, director, shareholder, manager, member or partner of an entity, and a spouse, ancestor or lineal descendant of any such officer, director, shareholder, manager, member or partner; (3) a spouse of an ancestor or lineal descendant of a person; and (4) any person or entity controlled by any person or entity designated above.

**Allowed Administrative Claim** shall mean all or that portion of any Administrative Claim, which has been or becomes allowed by Order of the Bankruptcy Court.

**Allowed Amount** shall mean the amount of an Allowed Claim.

**Allowed Claim** shall mean a Claim: (a) with respect to which a proof of Claim has been filed with the Bankruptcy Court in accordance with the provisions of Section 501 of the Code and Rule 3001 and within any applicable period of limitation fixed by Rule 3003 or any notice or Order of the Bankruptcy Court; (b) deemed filed, pursuant to Section 1111(a) of the Code, by virtue of such Claim having been scheduled in the lists of Creditors prepared and filed by

Debtors with the Bankruptcy Court, pursuant to Section 521(1) and Rule 1007(b), and not listed as disputed, contingent, or unliquidated; or (c) deemed an Allowed Claim (including Allowed Secured Claims and Allowed Unsecured Claims) pursuant to the provisions of the Plan or any Order of the Bankruptcy Court. Unless otherwise provided in the Plan or unless deemed or adjudicated an Allowed Claim, pursuant to the provisions of the Plan or any Order of the Bankruptcy Court, an Allowed Claim shall not include any Claim as to which an objection to or proceeding challenging the allowance thereof has been interposed, within any applicable period of limitation fixed pursuant to the Plan, by Rule 3003, or any Order of the Bankruptcy Court, until such objection or proceeding has been overruled, dismissed, or settled by entry of a Final Order. Notwithstanding the filing of any such objection or the commencement of any such proceeding a Claim may be temporarily allowed for voting purposes pursuant to the provisions of Rule 3018(a). Unless otherwise specified in the Plan or any Order of the Bankruptcy Court, an Allowed Claim shall not include or accrue interest on the amount of such Claim maturing, incurred otherwise, or arising subsequent to the Petition Date.

**Allowed Interest** shall mean an Interest: (a) with respect to which a proof of Interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Rule 3001 or a Final Order; and (b) as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Rule 3001 or any Order of the Bankruptcy Court.

**Allowed Priority Tax Claim** shall mean a Priority Claim, pursuant to Code Section 507(a)(8), to the extent such Priority Claim is or becomes an Allowed Claim.

**Allowed Secured Claim** shall mean a Secured Claim to the extent provided under Section 506 of the Bankruptcy Code and to the extent that neither the Lien underlying the Claim is challenged nor the amount of the Claim is challenged as provided for herein.

**Allowed Unsecured Claim** shall mean an Unsecured Claim to the extent such Unsecured Claim is or becomes an Allowed Claim.

**B Note** shall mean that note in a principal amount equal to the Allowed Class 1 Secured Claim of SunTrust Bank less the principal amount of the A Note, secured by a first mortgage on the Real Property and a first priority lien on the Cash Collateral among other collateral, which will earn interest at a rate equal to the Bloomberg One Month LIBOR plus 300 points and will have a term of three years, with an automatic one year extension if the reorganized Debtor is not in default on either the A Note, the B Note, or any of its obligations to SunTrust Bank pursuant to the Mortgage Documents, statute, this Plan, or other law. Payment of the B Note is subject to available cash of the Reorganized Debtor based on cash target working capital projections.

**Ballot** shall mean the form(s) distributed to each Creditor holding a Claim in an impaired Class, on which is to be indicated the acceptance or rejection of the Plan.

**Ballot Date** shall mean the date set by the Bankruptcy Court by which all votes for acceptance or rejection of the Plan must be received by the Bankruptcy Court or the balloting agent, as the case may be.

**Bankruptcy Case** shall mean the Debtor's bankruptcy case which is pending before the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, pursuant to Chapter 11 of the Code.

**Bankruptcy Code** shall mean the United States Bankruptcy Code, 11 U.S.C. 101, *et seq.*, and any amendments thereof.

**Bankruptcy Court** shall mean the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, in which Debtor's Bankruptcy Case is pending, and any Bankruptcy Court having jurisdiction to hear appeals or certiorari proceedings therefrom.

**Bankruptcy Estate** shall mean the collective estate, created pursuant to Section 541 of the Code, by the commencement of the Debtor's Bankruptcy case and shall include all property of the estate as defined in Section 541 of the Code.

**Bar Date** shall mean the date fixed by Order of the Bankruptcy Court as the last date for the filing of Claims in this Bankruptcy Case.

**Bloomberg One Month LIBOR** shall be the rate of interest as published by *BLOOMBERG.*

**Business Day** shall mean a day other than a Saturday or a Sunday or any other day on which the majority of commercial banks located in Orlando, Florida are open for business.

**Cash** shall mean cash or cash equivalents, including but not limited to, checks bank deposits, or other similar items.

**Cash Collateral** shall mean the Debtor's Cash, including Cash to be received from collection of the Debtor's accounts receivables and credit card receipts in transit.

**Causes of Action** shall mean the following actions and causes of action (and the proceeds thereof), whether or not commenced as of the date hereof, all proceedings, commenced or to be commenced pursuant to Bankruptcy Code Sections 105 and 502 and Sections 544-554 (or equivalent provisions of applicable non-bankruptcy laws).

**Chicago Title Payment** shall mean a cash payment in the amount of $50,000 paid by Chicago Title, which will constitute consideration for releases provided for in the Plan.

**Claim** shall mean any right to payment. whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

**Class** shall mean any Class into which Claims or Interests are classified pursuant to the Plan.

**Class 1 Claim, Class 2 Claim, Class 3 Claim,** *etc.*, shall mean the specific Class into which Claims or Interest are classified pursuant to Article II of the Plan.

**Class 3 Unit Amount** shall mean the unit amount held in escrow for each respective Holder of an Allowed Class 3 Claim as listed on Exhibit "A" to the Bankruptcy Court's November 23, 2009 Order.

**Code** shall mean the United States Bankruptcy Code. 11 U.S.C. 101, *et seq.*, and any amendments thereof.

**Committee** shall mean The Official Committee of Unsecured Creditors.

**Compensation and Management Fees** shall mean compensation permitted to be paid to the Kalidas Parties under the Mortgage Documents to manage the Real Property.

**Confirmation** shall mean the process leading to and including the entry of the Confirmation Order, pursuant to Section 1129 of the Code.

**Confirmation Date** shall mean the date of entry of the Confirmation Order by the Bankruptcy Court.

**Confirmation Order** shall mean the Order entered by the Bankruptcy Court confirming the Plan in accordance with the provisions of the Code and which is in form and content acceptable to the Debtors.

**Control** shall mean the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of an entity or person, whether through the ownership of voting securities, by contract, or otherwise.

**Creditor** shall have the same meaning as set forth in Section 101(1) of the Code.

**Debt** shall have the same meaning as set forth in Section 101(12) of the Code.

**Debtor** shall mean KA and KM Development, Inc.

**Debtor Sale** shall mean the transfer of Debtor's business in any manner, including without limitation the sale of the Real Property, the lease of the Real Property, the sale or transfer of stock in the Debtor, and/or a merger or consolidation involving the Debtor, or the change in ownership of the stock of the Debtor.

**Debtor Reports** shall mean the portion of the financial reports furnished by the Debtor to SunTrust Bank which relate to the Kalidas Distributions, and after the SunTrust Loan is paid in full, substantially similar financial reports prepared by the Debtor for the purpose of disclosing any Kalidas Distributions.

**Deposit Claimants** shall mean any creditor with a claim related to deposits placed with the Debtor in connection with a purchase contract for a condominium unit in the building constructed on the Real Property.

**Disclosure Statement** shall mean the Disclosure Statement approved for distribution by the Bankruptcy Court, pursuant to Section 1125 of the Code, together with any amendments or modifications thereto.

**Disputed Claim** shall mean a Claim against either of the Debtors which is not an Allowed Claim and which has not been disallowed by a Final Order of the Bankruptcy Court.

**Disputed Unsecured Claim** shall mean any Unsecured Claim, which is not an Allowed Unsecured Claim.

**Distribution** shall mean the distribution to the Holders of Allowed Claims.

**Effective Date** shall mean a date within thirty (30) days after the Bankruptcy Court has entered the Confirmation Order and provided that no appeal of the Confirmation Order is pending; *provided, however,* that the Effective Date shall not occur until all the preconditions to the occurrence of the Effective Date set forth in the Plan have been met. In the event that an appeal of the Confirmation Order is pending, the Effective Date may still occur on the 30th day after the entry of the Confirmation Order provided that the notice has been filed and the Debtor stipulates in writing that the Effective Date shall occur on such date.

**Equity Interests** shall mean any and all issued or authorized common stock, stock options, membership interests, and warrants in the Debtors.

**Escrow Agent** shall mean SunTrust Bank, in its capacity as escrow agent under the SunTrust Escrow Agreement.

**Escrow Funds** shall mean deposits held by Escrow Agent under the SunTrust Escrow Agreement.

**Estate Assets** shall mean all the assets, property, and cash of the Debtor, as defined in section 541 of the Code (excluding assets previously distributed, expended, or otherwise disposed of by the Debtors prior to the Confirmation Date not otherwise subject to recovery), wherever located or of whatever type or nature, existing as of the Confirmation Date, including without limitation the Causes of Action.

**Final Order** shall mean an Order or judgment of the Bankruptcy Court, which is no longer subject to appeal or certiorari proceedings and as to which no appeal or certiorari proceeding is pending or, in the discretion of the Debtor, if an appeal is filed and no stay has been entered.

**Garcia Plaintiffs** shall mean Rooney.

**General Unsecured Claimants** shall mean the Holders of Allowed Unsecured Claims, including any Deposit Claimants that are not Urban Rooney Claimants, or Remaining Unit Purchasers.

**Holder** shall mean the legal or beneficial Holder of a Claim or Interest and, when used in conjunction with a class or type of Claim or Interest, means a Holder of a Claim or Interest in such Class or of such type.

**Impaired Class** shall mean any Class whose members are Holders of Claims or Interests, which are impaired within the meaning of Section 1124 of the Code.

**Insider** shall have the same meaning as set forth in Section 101(31) of the Code.

**Interest** shall mean an issued or authorized outstanding share or shares of common stock, a warrant or warrants for the issuance of such share or shares, other stock, stock equivalents, limited partnership interest, or other equity instruments in the Debtor.

**KA and KM** shall mean KA and KM Development, Inc., its past or present owners, affiliates, subsidiaries, employees, agents, representatives, officers, members, counsel, and all other persons or entities acting or purporting to act under its control.

**Kalidas Parties** shall mean Vinod Kalidas, Nirmaksee Kalidas, and Arti V. Kalidas, and each of their successors and assigns.

**Kalidas Payment** shall mean a cash payment in the amount of at least $225,000 from the Kalidas Parties, which will constitute new value and consideration for releases provided for in the Plan.

**Kalidas Distributions** shall mean any Cash and/or other property other than Compensation and Management Fees (a) that Debtor pays or would pay to the Kalidas Parties and/or any one or more Affiliates of the Kalidas Parties if Article V(D)(1)(b)(iii) hereof were not applicable (including, without limitation, by dividend, distribution, return of capital, or in any other manner) and (b) any Cash and/or other property other than Compensation and Management Fees that the Kalidas Parties and/or any one or more Affiliates of the Kalidas Parties receive directly or indirectly (either through direct ownership or beneficial interest) arising out of, related to, or in connection with Debtor and/or any ownership of the Debtor (including, without limitation, any loan on which stock of Debtor is pledged as collateral and/or the sale of any stock of Debtor).

**Lien** shall mean any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of the Debtor but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by the Debtor, Reorganized Debtor, or any other party with standing to bring such a challenge.

**Limit** shall mean the amount of a Remaining Unit Purchaser's Total Deposit, less the amount received by the Remaining Unit Purchaser pursuant to Article V(D)(1)(b)(i) hereof.

**Mortgage Documents** shall mean that certain Mortgage, Assignment of Rents, and Security Agreement dated June 21, 2007, between Debtor and SunTrust Bank along with that certain Collateral Assignment of Purchase and Sale Contracts, Deposits, and Related Rights

dated June 21, 2007, between Debtor and SunTrust Bank and any other security agreements executed by Debtor and SunTrust Bank.

**Note Payments** shall mean those bi-annual payments to be made to Holders of the Cash Flow Notes as provided for in this Plan.

**Nonordinary Course Administrative Claim** shall mean an Administrative Claim other than an Ordinary Course Administrative Claim.

**Option 2 Remaining Unit Purchaser** shall mean a Remaining Unit Purchaser who selects Option 2 described in Article V(D)(1)(b) hereof.

**Option 2 Payments** shall mean payments made by the Kalidas Parties to the Remaining Unit Purchaser Escrow Agent pursuant to Article V(D)(1)(b)(iii) hereof.

**Order** shall mean a determination, decree, adjudication, or judgment issued or entered by the Bankruptcy Court.

**Ordinary Course Administrative Claim** shall mean an Administrative Claim incurred post-petition in the ordinary course of business of the Debtors; provided, however, that any due and unpaid post-petition payment with respect to rejected, or to be rejected, executory contracts or unexpired leases shall not be an Ordinary Course Administrative Claim.

**Payment** shall mean the Cash to be paid under the Plan to the Holders of Allowed Claims.

**Person** shall mean an individual, corporation, partnership, joint venture, trust, estate, unincorporated organization, or a government or any agency or political subdivision thereof.

**Petition Date** shall mean May 6, 2009, the date on which Debtor filed a voluntary petition for relief under Chapter 11 of the Code.

**Plaintiffs** shall mean each of the Garcia Plaintiffs and Urban Plaintiffs.

**Plan** shall mean this Chapter 11 Plan of Reorganization, as amended or modified in accordance with the terms hereof or in accordance with the Code.

**Plan Payments** shall mean payments made by the Reorganized Debtor pursuant to the terms of the Plan including the payment of Nonordinary Course Administrative Claims.

**Prepetition** shall mean the period of time preceding the Petition Date and concluding on the Petition Date.

**Priority Claim** shall mean a Claim, other than an Administrative Claim, to the extent such Claim is entitled to priority in payment under Section 507 of the Code.

**Professional** shall mean: (i) any professional retained in the Bankruptcy Case pursuant to an order of the Bankruptcy Court in accordance with Section 327 or 1103 of the Bankruptcy Code; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to Section 503(b) of the Bankruptcy Code; and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable, pursuant to Section 1129(a)(4) of the Bankruptcy Code.

**Property** shall have the same meaning as the term "property of the estate" delineated in Section 541 of the Code.

**Pro Rata Share** means as to any Allowed Class 3 Claims as of the Effective Date (including any portion of Class 2 Claims which are entitled to a portion of the Unsecured Creditors' Fund) or such later date on which such Claim becomes Allowed, a fraction of: (i) the numerator of which is the amount of such Allowed Claim: and (ii) the denominator of which is the sum of (x) all Allowed Class 3 Claims (including any portion of Class 2 Claims which are entitled to a portion of the Unsecured Creditors' Fund) as of such date plus (y) all Disputed Class

3 Claims (including any portion of Class 2 Claims which are entitled to a portion of the Unsecured Creditors' Fund) as of such date.

**Real Property** shall mean the real estate, buildings, fixtures, etc, located at 12388 International Drive South, Orlando, Florida 32821.

**Released Claims** shall mean any and all existing and future claims, obligations, proceedings, suits, judgments, damages, demands, debts, rights, causes of action, objection to the Claims and liabilities that are based in whole or in part on any act, failure to act, omission, transaction, or other occurrence taking place on or prior to the Effective Date that the Debtors, All Parties in Interest, Unsecured Creditors and Equity Security Holders has, had, or may have against the Released Parties except as further defined and limited in this Plan with respect to SunTrust Bank.

**Released Parties** shall mean Chicago Title, the Kalidas Parties, and SunTrust Bank.

**Remaining Unit Purchaser** shall mean each of the Deposit Claimants other than the Urban Rooney Claimants.

**Remaining Unit Purchaser Escrow Agent** shall mean the person who will receive and distribute Option 2 Payments and review Debtor Reports.

**Reorganized Debtor** shall mean the corporate entity emerging from this Chapter 11 and created on the Effective Date.

**Rule** or **Rules** shall mean the Federal Rules of Bankruptcy Procedure, as supplemented by the Local Bankruptcy Rules as adopted by the Bankruptcy Court.

**Secured Claim** shall mean a Claim secured by a Lien which is perfected and enforceable under applicable law, and which is not subject to avoidance under the Code or other applicable non-bankruptcy laws. A Secured Claim which is challenged by the Debtor or Reorganized

Debtor shall only be an Allowed Secured Claim to the extent that such Claim is deemed to be an Allowed Secured Claim in the Plan or the underlying Security Interest is recognized as valid by the Bankruptcy Court and the difference in amount between such a Creditor's Allowed Claim and its Allowed Secured Claim shall be an Allowed Unsecured Claim.

**Security Interest** shall mean "security interest" as defined in 11 U.S.C. §101 (51).

**SunTrust Bank** shall mean SunTrust Bank, in its capacity as lender.

**SunTrust Escrow Agreement** shall mean the Escrow Agreement between SunTrust Bank, Debtor, and the Committee.

**SunTrust Loan** shall mean the modified loan from SunTrust Bank to the Debtor.

**Tax Claim** shall mean an unsecured Claim for taxes entitled to priority under Section 507(a)(8) of the Code.

**Total Deposit** shall mean the amount shown in the column marked "Total Deposit" on Exhibit "A" to the SunTrust Escrow Agreement.

**Unclaimed Property** shall mean any cash, or any other Property of the Debtor or Reorganized Debtor unclaimed for a period of six (6) months after any Distribution.

**Unimpaired Class** shall mean any Class the members of which are the Holders of Claims or Interests, which are not impaired within the meaning of Section 1124 of the Code.

**Unsecured Claim** shall mean a Claim that arose or is deemed to have arisen prior to the Petition Date and is not a Secured Claim or an Administrative Claim.

**Unsecured Creditor** shall mean a creditor holding an Allowed Unsecured Claim.

**Unsecured Creditors' Fund** shall mean $50,000 to be paid *pro rata* to certain Holders of Allowed Class 2, Class 3, and Class 4 Claims as provided in the Plan.

**United States Trustee** shall have the same meaning ascribed to it in 28 U.S.C. § 581, *et seq.* and, as used in the Plan, refers to the office of the United States Trustee for Region 21 located in the Middle District of Florida, Orlando, Florida.

**Urban Rooney Claimants** shall mean James and Theresa Rooney and the ninety-three Deposit Claimants represented by Urban Their Federal and Jackson, P.A.

## ARTICLE II. - CLASSIFICATION OF CLAIMS AND INTERESTS.

All Claims and Interests treated under Articles III-VIII of the Plan are divided into the following classes, which shall be mutually exclusive:

A.    <u>Class 1 — SunTrust Bank.</u>

Class 1 consists of the Allowed Secured Claim of SunTrust Bank related to that certain Mortgage Note dated June 21, 2007 in the principal amount of $43,260,000.00. The Allowed Secured Claim is secured by a first priority mortgage on the Real Property with a first priority lien on Cash Collateral and other security. Class 1 is impaired.

B.    <u>Class 2 — Urban Rooney Claims.</u>

Class 2 consists of the Allowed Claims of the Urban Rooney Claimants. Class 2 is impaired.

C.    <u>Class 3 — Claims of the Remaining Unit Purchasers.</u>

Class 3 consists of the Allowed Claims of the Remaining Unit Purchasers. Class 3 is impaired.

D.    <u>Class 4 — General Unsecured Claims.</u>

Class 4 consists of the Allowed Claims of the General Unsecured Claimants. Class 4 is impaired.

E.     Class 5 — Equity Interests.

Class 5 is unimpaired. Class 5 consists of the ownership interest of the Kalidas Parties. The Kalidas Parties shall retain their respective ownership interest in Debtor.

## ARTICLE III. - ADMINISTRATIVE EXPENSES.

A.     Administrative Claims.

1.     Nonordinary Course Administrative Claims.

Any person, including any professional who has rendered services to Debtor during the course of the Bankruptcy Case, that asserts an Administrative Claim arising before the Confirmation Date, including Claims under Section 503(b) of the Code, but excluding Ordinary Course Administrative Claims as discussed below, shall, on or before the Administrative Claims Bar Date or other date as set by Bankruptcy Court order, file an application, motion, or request, as called for by the Rules, with the Bankruptcy Court for allowance of such Claim as an Administrative Claim specifying the amount of and basis for such Claim; *provided, however,* that applicants or movants who have previously filed applications, motions, or requests with the Bankruptcy Court need not file another such paper for the same Claim. Failure to file a timely application, motion, or request for allowance pursuant to this Section by any Holder of a Nonordinary Course Administrative Expense Claim, other than such a Holder engaged or employed by the Reorganized Debtor shall bar such a claimant from seeking recovery on such Claim.

Each Holder of a Nonordinary Course Administrative Claim of the Debtor shall be paid by the Reorganized Debtor one hundred percent (100%) of its Allowed Claim in Cash, unless otherwise ordered by the Bankruptcy Court or agreed to by such Holder, on or before the Effective Date or such later date as may be agreed to by such Holder, or, if the Claim

does not become Allowed prior to the Effective Date, on the date the Allowed Amount of such Claim is determined by Final Order of the Bankruptcy Court. As provided for in Article VII of the Plan, the Kalidas Payment and the Debtor's cash-on-hand as of the Effective Date shall be first used to pay Nonordinary Course Administrative Claims. However, nothing in this provision of the Plan shall preclude the Reorganized Debtor from paying any Holder of a Nonordinary Course Administrative Claim less than one hundred percent (100%) of its Allowed Claim in Cash on the Effective Date provided that such Claim Holder consents to different payment terms.

2.     <u>Ordinary Course Administrative Claims.</u>

Ordinary Course Administrative Claims will be resolved through the performance of the obligation by the Reorganized Debtor in accordance with the terms and conditions of the agreement or applicable law giving rise thereto. An applicant for such Claim need not file an application, motion, or request to protect its rights with respect to Ordinary Course Administrative Claims.

B.     <u>Tax Claims.</u>

Except to the extent that the Holder and Reorganized Debtor have agreed or may agree to a different treatment, each Holder of an Allowed Priority Tax Claim shall receive from the Reorganized Debtor, in full satisfaction of such Claim, payments equal to the Allowed Amount of such Claim. Allowed Priority Tax Claims will be paid as of the Effective Date of the Plan.

## ARTICLE IV. - TREATMENT OF UNIMPAIRED CLASSES.

The only Class of Claims and Interests which is Unimpaired is Class 5. The Treatment for this Class is as follows:

A.    Class 5 - Equity Interests.

Class 5 is unimpaired. Class 5 consists of the ownership interest of the Kalidas Parties. The Kalidas Parties shall retain their respective ownership interest in Debtor.

## ARTICLE V. - TREATMENT OF IMPAIRED CLASSES OF CLAIMS.

A.    Determination of Allowed Amounts.

Treatment prescribed for Claims and Interests in the following sections of this Article V shall in all events refer exclusively to the Allowed Amount of each respective Claim. In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the Effective Date, then the treatment prescribed shall be deemed effective as of the date of the determination of such Claim by agreement or Final Order or as otherwise provided under the Plan. Notwithstanding Confirmation of the Plan, the Debtor reserves the right to object to any Claim (other than Claims deemed in the Plan to be Allowed Claims) for any reason authorized by applicable bankruptcy and nonbankruptcy law as well as the right to assert that any such Claim includes amounts subject to equitable subordination or other equitable relief.

B.    Class 1 — SunTrust Bank.

Class 1 consists of the Allowed Secured Claim of SunTrust Bank related to that certain Mortgage Note dated June 21, 2007 in the original principal amount of $43,260,000.00. The total Allowed Class 1 Secured Claim is estimated in the amount of $38,719,005.70 and is secured by the existing, valid first mortgage on the Real Property of the Debtor along with other collateral, as well as a first priority lien in the Debtor's Cash Collateral, hotel receipts, and accounts receivable.

In full satisfaction of SunTrust Bank's Allowed Class 1 Secured Claim, SunTrust Bank shall retain its liens and receive the following: The existing note will be amended and

bifurcated into (i) the A Note; and (ii) the B Note. The A Note and the B Note will include additional terms, and are to be secured by the Mortgage Documents dated June 21, 2007 and all other prior security interest arrangements between the Debtor and SunTrust Bank, which will remain in full force and effect. If requested by SunTrust Bank, the Mortgage Documents will be modified and additional documents may be executed to provide SunTrust Bank with additional collateral. After confirmation, SunTrust Bank may record or otherwise perfect any modifications to the Mortgage Documents or additional security documents. The Debtor, the Debtor's principals, and SunTrust Bank will execute such documents as are reasonably required for the restructuring of the loan.

SunTrust Bank shall retain as additional security for the debt a deed in lieu of foreclosure to SunTrust Bank or its assigns executed by Debtor (and which does not constitute the discharge of any debt) as security which SunTrust Bank shall hold in escrow and may only record pursuant to the terms to be agreed by Debtor and SunTrust Bank at a later date; furthermore, at confirmation SunTrust Bank and the Debtor will enter into a settlement agreement and agree to a stipulated foreclosure judgment in the event of default.

SunTrust Bank will apply a portion of Nirmaksee Kalidas' personal account at RBC Bank, which was pledged to SunTrust Bank, against the balance of the B Note upon confirmation, to be determined based on the amount of the A Note, while the remaining funds from that account will be used to create an operating reserve account for the Debtor which may be used for payments on the A Note in SunTrust Bank's discretion. The Kalidas Parties will reaffirm any existing personal guarantees of the debt, and Eve Management, Inc., will further provide a corporate guaranty and will subordinate its management agreement to the Mortgage Documents.

Any monies held in escrow by SunTrust Bank pursuant to the Order of this Court dated November, 23, 2009, and that are not to be distributed to any third party Deposit Claimants under the terms of this Plan, SunTrust Bank shall apply to the principal of the B Note, at closing or as otherwise available. In addition, a renewal fee of $353,000.00 will be added to the balance of the B Note along with unpaid, accrued interest (at this time, approximately $499,584.39) which will be added as principal to the balance of the B Note.

On the first day of the month following the Effective Date, the Reorganized Debtor shall commence monthly interest - only payments to SunTrust Bank on the A Note based upon an interest rate equal to Bloomberg One Month LIBOR plus three hundred (300) basis points. The interest rate on the A Note shall have a floor of six percent (6%) and a ceiling of seven and a half percent (7.5%). Failure to make the appropriate monthly payments on the A Note will constitute a default by Debtor. The term of the A Note shall be three (3) years, with an automatic one (1) year extension if the Reorganized Debtor is not in default on either the A Note, the B Note, or any of its obligations to SunTrust Bank pursuant to the Mortgage Documents, statute, this Plan, or other law.

On the first day of the month following the Effective Date, the Reorganized Debtor shall commence monthly payments to SunTrust Bank on the B Note based upon an interest rate equal to Bloomberg One Month LIBOR plus three hundred (300) basis points. The monthly payments will be based on the prior month's cash flow after all operating expenses, and a minimum targeted level of cash working capital. Debtor and SunTrust Bank will mutually agree upon the minimum monthly target for cash working capital. Each month, funds in excess of the cash working capital target will be applied to the accrued, unpaid interest on the B Note. If all accrued, unpaid interest is brought current, then monthly payments will pay current

monthly interest and any excess funds will be applied to the principal balance of the B Note. Any interest unpaid in any given month will accrue. All unpaid accrued interest will be due on maturity. The interest rate on the B Note shall have a floor of six percent (6%) and a ceiling of seven and a half percent (7.5%). Failure to make the appropriate monthly payments on the B Note when the Debtor has met its cash working capital target will constitute a default by Debtor. The term of the B Note shall be three (3) years, with an automatic one (1) year extension if the Reorganized Debtor is not in default on either the A Note, the B Note, or any of its obligations to SunTrust Bank pursuant to the Mortgage Documents, statute, this Plan, or other law.

The automatic extension for the A Note and the B Note will be subject to a 1% extension fee based on the total outstanding principal at the time of the extension, and which will be added to the principal of the B Note as of the date of the extension. The A Note and B Note are dependent obligations and are to have cross-default provisions.

C.    Class 2- Urban Rooney Claims.

Class 2 consists of the Allowed Claims of the Urban Rooney Claimants. The Urban Rooney Claimants assert secured, priority, and unsecured claims based upon deposits placed with the Debtor. The Mediation Settlement Agreement (Urban Plaintiffs and Rooney) entered into on December 1, 2009 sets forth the treatment of the Claims of the Urban Rooney Claimants and is incorporated by this reference into the Plan. In summary, each Holder of an Allowed Class 2 Unsecured Claim shall receive on the Effective Date: (i) an amount equal to the unit amount currently held in escrow for each such Holder (the amount listed for that Holder on Exhibit "A" to the Bankruptcy Court's 11/23/2009 Order "Deposit in Escrow" column ($30,900.00 for line 163 is to be dispursed to Unit 804 on line 80), or as otherwise determined by the Court); plus (ii) payment of such Holder's Allowed Priority Claim in the amount of

$2,425.00; plus (iii) an entitlement to a pro rata share (based each such Holder's Allowed Claim less amounts received on the Effective Date for return of deposit and for priority claim) of the $50,000.00 Unsecured Creditors' Fund.

D.    <u>Class 3 — Claims of Remaining Unit Purchasers.</u>

Class 3 consists of the Allowed Claims of the Remaining Unit Purchasers. The Mediation Settlement Agreement (Official Committee of Unsecured Creditors) entered into on December 1, 2009 generally sets forth the treatment of the Claims of the Remaining Unit Purchasers and is incorporated by this reference into the Plan, subject to the additional terms set forth herein.

The Claims of the Remaining Unit Purchasers shall be treated as follows:

1.    The Ballot will specify that each Remaining Unit Purchaser shall select one of the two options below in settlement of such Remaining Unit Purchaser's Claim. In the event that a Remaining Unit Purchaser fails to make a selection, such Remaining Unit Purchaser shall be treated as selecting Option 1 below. The two options are as follows:

a.    Option 1:

i.    On the Effective Date, the Escrow Agent shall pay such Remaining Unit Purchaser 100% of the amount listed for such Remaining Unit Purchaser in the column marked "Deposit in Escrow" on Exhibit "A" to the SunTrust Escrow Agreement in Cash from the Escrow Funds.

ii.    Such Remaining Unit Purchaser will have an Allowed Unsecured Claim in the amount of such Remaining Unit Purchaser's Total Deposit, less the amounts received under subparagraph i. hereunder, to be paid pro rata from the Unsecured Creditors' Fund.

b. Option 2:

i. On the Effective Date, the Escrow Agent shall pay each Option 2 Remaining Unit Purchaser 75% of the amount listed for such Option 2 Remaining Unit Purchaser in the column marked "Deposit in Escrow" on Exhibit "A" to the SunTrust Escrow Agreement in Cash from the Escrow Funds.

ii. Such Option 2 Remaining Unit Purchaser will have an Allowed Unsecured Claim in the amount of such Option 2 Remaining Unit Purchaser's Total Deposit, less the amounts received under subparagraph i. hereunder, to be paid pro rata from the Unsecured Creditors' Fund.

iii. Such Option 2 Remaining Unit Purchaser shall receive the following:

1) Until payments to each Option 2 Remaining Unit Purchaser received pursuant to the provisions in Option 2 equals the Limit for such Option 2 Remaining Unit Purchaser, the Kalidas Parties shall pay fifty percent (50%) of all Kalidas Distributions to the Remaining Unit Purchaser Escrow Agent for the benefit of the Option 2 Remaining Unit Purchasers, provided that the SunTrust Loan has been paid in full. The remaining fifty percent (50%) of the Kalidas Distributions shall be retained by the Kalidas Parties. In the event of a Debtor Sale, after payment to SunTrust Bank of the amounts owed pursuant to the SunTrust Loan, regardless of whether Kalidas Distributions are made, the remaining proceeds of the Debtor Sale after such payment to SunTrust Bank shall be deemed Kalidas Distributions. No monies or other compensation whatsoever other than Compensation and Management Fees shall be paid to the Kalidas Parties until the SunTrust Loan is paid in full.

2)     Within thirty (30) days after the Remaining Unit Purchaser Escrow Agent receives any Option 2 Payments, the Remaining Unit Purchaser Escrow Agent shall deliver to each Option 2 Remaining Unit Purchaser, until the Limit is reached for the Option 2 Remaining Unit Purchaser, an amount equal to the product of the amount of such Option 2 Payments multiplied by a fraction, the numerator of which is the Limit for the Option 2 Remaining Unit Purchaser and the denominator of which is the aggregate of the Limits of all Option 2 Remaining Unit Purchasers.

3)     Until payments to each Option 2 Remaining Unit Purchaser pursuant to the provisions in this Option 2 equals the Limit for such Option 2 Remaining Unit Purchaser, within thirty (30) days after March 31st of each year beginning on March 31, 2011, the Kalidas Parties shall deliver to the Remaining Unit Purchaser Escrow Agent the Debtor Reports for the immediately preceding year.

4)     The Remaining Unit Purchaser Escrow Agent's duties hereunder shall be limited to those specifically set forth in this Option 2.  No implied duties shall be read into this Plan against the Remaining Unit Purchaser Escrow Agent.  The Remaining Unit Purchaser Escrow Agent may act in reliance upon any writing, document or signature that it, in good faith, believes to be genuine; may assume the validity and accuracy of any statement or assertion contained in such writing or document; and may assume that any person purporting to give any writing, notice, advice or instruction in connection with the provisions of this Option 2 has been duly authorized to do so.  The Remaining Unit Purchaser Escrow Agent shall not be liable in any manner for (a) the sufficiency; correctness as to form, manner or execution; or validity of any document; (b) the identity, authority or right of any

person executing the same; or (c) any mistakes of fact, error of judgment or any acts or omissions of any kind unless caused by its willful misconduct or gross negligence.

5)      The Remaining Unit Purchaser Escrow Agent may consult legal counsel satisfactory to it, including counsel to the Committee or counsel for any of the other parties to this Plan.  The opinion of such counsel shall be full and complete authorization and protection in respect of any action taken, suffered or omitted by the Remaining Unit Purchaser Escrow Agent pursuant to this Plan in good faith and in accordance with the opinion of such counsel.

6)      If any Option 2 Remaining Unit Purchaser, the Kalidas Parties, and/or the Remaining Unit Purchaser Escrow Agent are in disagreement about the rights and obligations of, or the propriety of any action contemplated by the Remaining Unit Purchaser Escrow Agent pursuant to the Plan, the Remaining Unit Purchaser Escrow Agent may, in its sole discretion, file an action in interpleader in the Bankruptcy Court to resolve the disagreement.  The Remaining Unit Purchaser Escrow Agent shall be fully protected in suspending all or a part of its activities pursuant to this Plan until a final determination of the Bankruptcy Court.  If it is determined that the Kalidas Parties have violated the provisions of Article V(D)(1)(b)(iii), the Remaining Unit Purchaser Escrow Agent shall be entitled to petition the Courts for Orange County, Florida, for specific performance of the Kalidas Parties' responsibilities hereunder and for the assessment of damages and penalties against the Kalidas Parties.

7)      The Option 2 Remaining Unit Purchasers, other than the Remaining Unit Purchaser Escrow Agent, hereby jointly and severally agree to indemnify the Remaining Unit Purchaser Escrow Agent and hold it harmless from any and all

claims, liabilities, losses, actions, suits or proceedings at law or in equity, or any other expenses, fees, or charges of any character or nature, that the Remaining Unit Purchaser Escrow Agent may incur or with which it may be threatened by reason of its acting pursuant to this Plan, including attorneys' fees at all trial and appellate levels and the costs of defending any action, suit or proceeding or resisting any claim.

8)	The Option 2 Remaining Unit Purchasers hereby jointly and severally agree to reimburse the Remaining Unit Purchaser Escrow Agent for its out-of-pocket expenses incurred in the administration of the escrow arrangement contained in this Option 2.

9)	At any time that a person is serving as Chair of the Committee, such Chair shall be the Remaining Unit Purchaser Escrow Agent. Upon dissolution of the Committee, the Chair of the Committee shall serve as the Remaining Unit Purchaser Escrow Agreement until such time as such person resigns or is deceased. The Option 2 Remaining Unit Purchasers shall select (by majority vote of the Option 2 Remaining Unit Purchasers) the successor Remaining Unit Purchaser Escrow Agent, who shall serve until such time as a duly-elected successor is thereafter elected by the Option 2 Remaining Unit Purchasers. If a successor escrow agent is not appointed within 30 days of the date on which no person is serving as Chair of the Committee, any Option 2 Remaining Unit Purchaser may petition the Bankruptcy Court to name a successor.

10)	Until payments to each Option 2 Remaining Unit Purchaser pursuant to this Option 2 equals the Limit for such Option 2 Remaining Unit Purchaser, regardless of when the SunTrust Loan is paid, the restrictive and negative covenants

in the Mortgage Documents and other loan documents, including the guaranties of the Kalidas Parties, shall continue to apply to Debtor and the Kalidas Parties.

11) At such time as the Option 2 Payments equal in the aggregate $2,250,000.00, the provisions of Article V(D)(1)(b)(iii) shall terminate and be of no further force or effect whatsoever.

iv. <u>Lowest Room Rate</u>: During the period that Debtor owns the Real Property and offers rooms in the building constructed thereon for rent on a nightly basis in the ordinary course of business, Debtor shall at all times offer each Option 2 Remaining Unit Purchaser the lowest room rate offered by the Debtor at any given time (including rates offered to corporate and association clients), provided that the Option 2 Remaining Unit Purchaser books the room at least 15 days in advance and that a room is available at the time that the reservation is made. This arrangement is subordinated to the Mortgage Documents and will remain in place until there is any change in ownership of the Debtor or change in ownership of the Real Property, at which point the arrangement terminates.

v. <u>Termination of Contracts</u>. All Remaining Unit Purchasers are released from any contractual obligations under purchase contracts for condominium unit(s) in the building constructed on the Real Property and such contracts are null and void.

E. <u>Class 4 — General Unsecured Claims.</u>

Class 4 consists of the unsecured claims of Holders of Unsecured Claims, including trade creditors but excludes Claims of the Urban Rooney Claimants and Claims of the Remaining Unit Purchasers. The Holders of General Unsecured Claims will be paid a pro rata share of the Unsecured Creditors Fund in full satisfaction of their claims.

F. Class 5 — Equity Interests.

Class 5 is unimpaired. Class 5 consists of the ownership interest of the Kalidas Parties. The Kalidas Parties shall retain their respective ownership interest in Debtor.

## ARTICLE VI. - UNEXPIRED LEASES AND EXECUTORY CONTRACTS.

To the extent the Debtor rejects any executory contract or unexpired lease prior to the Confirmation Date, any party asserting a Claim, pursuant to Section 365 of the Code, arising from the rejection of an executory contract or lease shall file a proof of such Claim within thirty (30) days after the entry of an Order rejecting such contract or lease, and any Allowed Claim resulting from rejection shall be a Class 4 Claim except as otherwise provided herein. The Debtor shall have through and including the hearing on Confirmation within which to assume or reject any unexpired lease or executory contract; and, further, that in the event any such unexpired lease or executory contract is not assumed (or subject to a pending motion to assume) by such date, then such unexpired lease or executory contract shall be deemed rejected as of the Confirmation Date.

## ARTICLE VII. - MEANS OF IMPLEMENTATION.

A. Chicago Title Payment.

The Plan contemplates a payment in the amount of $50,000 from Chicago Title, which will constitute consideration for releases provided for in the Plan. It is the Debtor's belief that payment of the Chicago Title Payment is integral part of the Plan and will provide funding of the Unsecured Creditors' Fund.

B. Kalidas Payment.

The Plan contemplates a payment in the amount of $225,000 from the Kalidas Parties, which will constitute new value and consideration for releases provided for in the Plan. It

is the Debtor's belief that payment of the Kalidas Payment is integral part of the Plan and will assist the Reorganized Debtor in making payments contemplated under the Plan.

C.      Business Operations and Cash Flow.

The Reorganized Debtor will continue to operate its business. The Debtor believes cash flow from the continued operation of the business along with receipt of the Chicago Title Payment and the Kalidas Payment will be sufficient to meet all required Plan Payments.

D.      Funds Generated During Chapter 11.

Funds generated from operations until the Effective Date will be used for operational expenses and Plan Payments.

E.      Management and Control of Reorganized Debtor.

a.      Directors. The operations of the Reorganized Debtor shall be overseen by its Board of Directors. The Board of Directors shall have the power to request and obtain all financial data and operational information regarding the Reorganized Debtor at any time. The Board of Directors shall have all corporate authority vested in boards of directors under the applicable laws of the State of Florida including the power to appoint and terminate officers and to liquidate the Reorganized Debtor and to wind up its affairs, with all such powers to be exercised by a majority vote.

The initial Directors shall be Vinod Kalidas, Arti Kalidas, and Nirmaksee Kalidas and each shall continue to serve until either: (i) the Reorganized Debtor ceases to do business; or (ii) a Director resigns or is replaced by the shareholders in accordance with Florida law.

b. <u>Officers.</u> No officer of Reorganized Debtor shall have the authority to sell substantially all of the assets of Reorganized Debtor or to liquidate the Reorganized Debtor unless a majority of the Directors of the Reorganized Debtor approves such actions. Should a majority of the Directors of the Reorganized Debtor instruct the officers of Reorganized Debtor to take such actions, the officers of Reorganized Debtor shall follow such instructions to the best of their abilities.

Vinod Kalidas shall be the President of the Reorganized Debtor and shall receive an annual salary of $100,000.00  Arti Kalidas shall be the secretary of the Reorganized Debtor and shall receive an annual salary of $60,000.00.  Nirmaksee Kalidas shall be the Treasurer of the Reorganized Debtor and will not receive an annual salary.  The Reorganized Debtor and Eve Management, Inc. will not adjust the compensation of any officer of the company at any time after the Effective Date without the agreement of SunTrust Bank. As of the date of this Disclosure Statement, the Debtor is current on its post petition officer's salary obligations.

F. <u>Stock in the Reorganized Debtor.</u>

After Confirmation, the common stock of the Equity Holder shall remain in full force and effect as set forth in this Plan.

G. <u>Additional Provisions.</u>

1. <u>Procedures For Resolving Disputed Claims.</u>

a. <u>Prosecution of Objections to Claims.</u>

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, and except as otherwise provided in the Plan, Debtor and the Reorganized Debtor shall have the exclusive right to make and file objections to all Claims.

Pursuant to the Plan, unless another time is set by order of the Bankruptcy Court, all objections to Claims and Equity Interests shall be Filed with the Court and served upon the Holders of each of the Claims and Equity Interests to which objections are made within 90 days after the Effective Date.

Except as may be specifically set forth in the Plan. nothing in the Plan, the Disclosure Statement, the Confirmation Order or any order in aid of Confirmation. shall constitute, or be deemed to constitute, a waiver or release of any Claim, Cause of Action, right of setoff, or other legal or equitable defense, that the Debtor had immediately prior to the commencement of the Bankruptcy Case, against or with respect to any Claim or Equity Interest. Except as set forth in the Plan, upon Confirmation, the Debtor shall have, retain, reserve and be entitled to assert all such Claims, Causes of Action, rights of setoff and other legal or equitable defenses that the Debtor had immediately prior to the commencement of the Bankruptcy Case as if the Bankruptcy Case had not been commenced.

b.   <u>Estimation of Claims.</u>

Pursuant to the Plan, the Debtor may, at any time, request that the Bankruptcy Court estimate any contingent, disputed, or unliquidated Claim, pursuant to Section 502(c) of the Bankruptcy Code, regardless of whether the Debtors have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, disputed, or unliquidated Claim, that estimated amount will constitute either the Allowed Amount of such Claim or a maximum limitation on such Claim. as determined by the Bankruptcy Court. If the

estimated amount constitutes a maximum limitation on such Claim, the Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment on such Claim.

c. Cumulative Remedies.

In accordance with the Plan, all of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court. Until such time as an Administrative Claim, Claim, or Equity Interest becomes or is otherwise deemed in this Plan to be an Allowed Claim, such Claim shall be treated as a Disputed Administrative Claim, Disputed Claim, or Disputed Equity Interest for purposes related to allocations, Distributions, and voting under the Plan.

d. Disallowance of Certain Claims and Interests.

According to the Plan, all Claims held by Entities against whom the Debtor has obtained a Final Order establishing liability for a cause of action under Sections 542, 543, 522(f), 522(h), 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code shall be deemed disallowed, pursuant to Section 502(d) of the Bankruptcy Code. and Holders of such Claims may not vote to accept or reject the Plan. both consequences to be in effect until such time as such causes of action against that Entity have been settled or resolved by a Final Order and all sums due the Debtors by that Entity are turned over to Debtors or Reorganized Debtor.

e. Controversy Concerning Impairment.

If a controversy arises as to whether any Claims or Equity Interests or any Class of Claims or Equity Interests are Impaired under the Plan, the Bankruptcy Court. after notice and a hearing shall determine such controversy before the Confirmation Date. If such

controversy is not resolved prior to the Effective Date, the Debtors' interpretation of the Plan shall govern.

## ARTICLE VIII. – RELEASES.

### A.     Releases / Injunctions.

The Plan is premised upon the releases contained below.  The Debtor asserts the releases are being given to Chicago Title, the Kalidas Parties, and SunTrust as consideration for the Chicago Title Payment provided by Chicago Title, the Kalidas Payment provided by the Kalidas Parties, and the significant modification of the SunTrust debt under the Plan and are fair consideration for the such payments to be made under the Plan.  Moreover, the Debtor believes any Claims or Causes of Action against the Released Parties are subject to substantial defenses and extensive litigation costs and risks.  The Debtor further believes that any recovery from such Claims or Causes of Action would be minimal (at best), would require protracted and costly litigation, and the Debtor would not be restructured and reorganized.

From and after the Confirmation Date, the Releases, described in this Article VIII, shall become effective and the Debtor and all parties-in-interest shall be enjoined from commencing or continuing any Released Claims against the Released Parties.

a.     **Rule 3016(c) Declaration.**  In accordance with the requirements of Rule 3016(c), the provisions of this Article VIII operate to specifically release the Released Parties from all claims and enjoin certain acts in connection with such release.  Such release and injunctions cover the Released Parties whose contributions are so critical to the reorganization effort that without them the reorganization would fail.  From and after the Confirmation Date, the Releases described herein shall become effective and the Debtor, All Parties in Interest, Unsecured Creditors, and Equity Security Holders shall be enjoined from commencing or continuing any Released Claims against the Released Parties.  Within this Section **bold print**

**and italics** are used to identify the exact nature of releases and to identify the parties subject to the release.

      b.     *General Releases by the Debtor and Interested Parties.*

      *On the Effective Date, in consideration for respective waivers and payment of Unsecured Claims, **the Debtor, All Parties in Interest, Unsecured Creditors and Equity Security Holders** will be deemed to forever release, waive, discontinue, and discharge all existing and future claims, obligations, proceedings, suits, judgments, damages, demands, debts, rights, causes of action, objection to the Claims and liabilities that are based in whole or in part on any act, failure to act, omission, transaction, or other occurrence taking place on or prior to the Effective Date that **the Debtor, All Parties in Interest, Unsecured Creditors and Equity Security Holders** has, had, or may have against the Released Parties. Notwithstanding the above, SunTrust Bank does not generally release Chicago Title, but releases Chicago Title only with respect to the claims of the Deposit Claimants. Nor does SunTrust Bank release the Debtor or the Kalidas Parties.*

      c.     *Injunction Related to Releases.*

      *Except as expressly provided in the Plan or to otherwise enforce the terms of the Plan as of the Confirmation Date, **the Debtor and All All Parties in Interest, including Unsecured Creditors and Equity Security Holders**, to the fullest extent permitted by applicable law, are permanently enjoined from taking any of the following actions on account of any such discharged Claims, debts, liabilities, terminated, Interests, or rights: (i) commencing or continuing in any manner any action or proceeding against the Released Parties or his respective property, other than to enforce any right, pursuant to the Plan, to a distribution; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or*

order against the Released Parties; (iii) creating, perfecting, or enforcing any lien or encumbrance against the Released Parties, including any equitable lien against the Real Property; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability, or obligation due to the Released Parties; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan. **Notwithstanding the above**, SunTrust Bank is not enjoined from taking action against Chicago Title, except with respect to the actions arising from the claims of the Deposit Claimants. **Nor** is SunTrust Bank enjoined from taking actions against the Debtor or the Kalidas Parties for the obligations of the Debtor or the Kalidas Parties arising from the Plan or the restructured debt and reaffirmed guarantees.

## ARTICLE IX. — MISCELLANEOUS.

### A. Effects of Confirmation.

#### 1. Amendments to the Plan.

The Debtor reserves all rights to amend, alter, or withdraw this Plan before conclusion of the Confirmation Hearing and to amend, modify, or alter this Plan after the Confirmation Date, in accordance with the applicable provisions of the Code.

#### 2. Authority to Effectuate the Plan.

Upon the entry of the Confirmation Order by the Bankruptcy Court, the Plan provides all matters provided under the Plan will be deemed to be authorized and approved without further approval from the Bankruptcy Court. The Reorganized Debtor shall be authorized, without further application to or order of the Bankruptcy Court. to take whatever action is necessary to achieve consummation and carry out the Plan in accordance with this Plan and the Code.

3. Post-Confirmation Status Report.

Pursuant to the Plan, within 120 days of the entry of the Confirmation Order, the Reorganized Debtor will file status reports with the Court explaining what progress has been made toward consummation of the confirmed Plan. The status report will be served on the United States Trustee and those parties who have requested special notice post-confirmation. The Bankruptcy Court may schedule subsequent status conferences in its discretion.

4. Retention of Professionals.

The Reorganized Debtor may retain professionals on such terms, as the Reorganized Debtor deems reasonable without Bankruptcy Court approval. Persons who served as professionals to the Debtor prior to the Effective Date may also continue to serve the Reorganized Debtor.

B. Conditions to Effectiveness.

The Effective Date shall not occur until all of the following conditions have been satisfied:

1. The entry of the Confirmation Order by the Bankruptcy Court in form and content acceptable to the Debtor and expiration of the appeal period with respect to the Confirmation Order without the filing of a notice of appeal of such Order; *provided, however,* that, if an appeal of the Confirmation Order is filed but no stay is granted in connection with the appeal, the Debtor may in writing elect to permit the Effective Date to occur notwithstanding the pendency of the appeal.

2. Inclusion in the Confirmation Order of an injunctive provision staying, restraining, and enjoining all individuals or entities, except as set forth in Article V., from commencing, enforcing, perfecting, or setting off any Claim, judgment, or Interest against the

Debtors, or any property thereof, or against any of the Debtor's transferees for the purposes of, directly or indirectly, collecting, recovering, or receiving payment of, on, or with respect to, any Claim or Equity Interest; provided, that such injunctive provision shall not prevent any governmental unit from enforcing such governmental unit's police or regulatory power.

       3.     All ancillary documents necessary to implement and confirm the Plan have been approved by the Debtor unless the Debtor has waived this requirement in writing. Upon the satisfaction or waiver of each of the foregoing conditions, the Debtor shall so notify the Bankruptcy Court, and upon the filing of such notice the Plan shall become Effective without further Order of the Bankruptcy Court provided that all of the conditions to effectiveness of the Plan set forth herein, including those set forth below, have been met.

       C.     <u>Discharge and Injunction.</u>

       1.     <u>Discharge.</u> To the fullest extent permitted by applicable law, and except as otherwise provided in the Plan, the operative documents implementing the Plan, or the Confirmation Order: (a) on the Effective Date the Confirmation Order shall operate as a discharge under 11 U.S.C. §1140(d)(1) of the Bankruptcy Code, and as a release of any and all Claims, Debts, Liens, Security Interests, and encumbrances of and against the Reorganized Debtor and all Property that arose before Confirmation, including without limitation, any Claim of a kind specified in §§ 502(g), 502(h), or 502(i) of the Bankruptcy Code, and all principal and interest, whether accrued before, on, or after the Petition Date, regardless of whether (i) a Proof of Claim has been filed or deemed filed, (ii) such Claim has been Allowed pursuant to §502 of the Bankruptcy Code, or (iii) the Holder of such Claim has voted on the Plan or has voted to reject the Plan; and (b) from and after the Effective Date (i) all Holders of Claims shall be barred and enjoined from asserting against the Reorganized Debtor and its property any Claims. Debts,

Liens, Security Interests, and encumbrances of and against all Property of the Estate, and (iii) the Debtors shall be fully and finally discharged of any liability or obligation on a Disallowed Claim or an Interest. Except as otherwise specifically provided herein, nothing in the Plan shall be deemed to waive, limit, or restrict in any manner the discharge granted upon Confirmation of the Plan pursuant to §1141 of the Bankruptcy Code.

2. <u>Injunction.</u> As part of the Confirmation Order, the Bankruptcy Court shall permanently enjoin and prohibit all Holders of Claims, Liens, Security Interests, Liens, encumbrances rights and Interest in, to or against the Debtor and Reorganized Debtor or any of its assets from asserting, prosecuting or collecting such Claims, Liens, Security Interests (other than Liens or Security Interests expressly continued pursuant to the terms of the Plan or the operative documents between the Debtor and the Holder of a Claim regarding the treatment of the Claim under the Plan), encumbrances, rights and Interests against the Reorganized Debtor; provided, however, that such injunction shall not apply to any Claim asserted against the Reorganized Debtor by a claimant based upon a default by the Reorganized Debtor in performance of its obligations to the claimant under the Plan.

D. <u>Retention of Jurisdiction.</u>

After the Effective Date, the Reorganized Debtor will be free to perform all functions assigned to it under the Plan without approval of the Bankruptcy Court, except as specifically set forth herein. However, the Bankruptcy Court will continue to retain jurisdiction in this Case with respect to the following matters:

1. All objections to the allowance of Claims and Interests and the compromise of Claims;

2.    All applications for allowance of compensation and reimbursement of out-of-pocket expenses of professionals retained in the Debtor's case by Order of the Bankruptcy Court to the extent that such compensation and out-of-pocket expenses relate to services performed before the Confirmation Date; *provided, however,* that fees of professionals for services rendered after the Effective Date may be paid by the Reorganized Debtor in the ordinary course of business without a Bankruptcy Court order; *provided, further, however,* in the event that an objection is made as to post-Confirmation Date requested fees or expenses, application shall be made to the Bankruptcy Court for allowance of such fees and expenses;

3.    Any adversary proceedings or contested matters brought by the Reorganized Debtor, including but not limited to the Causes of Action, the proceedings then pending or thereafter brought pursuant to Sections 544, 545, 547, 548, 549, and 550 of the Code;

4.    All controversies and disputes arising under or in connection with the Plan;

5.    The enforcement and interpretation of the provisions of the Plan;

6.    To issue such orders in aid of execution and consummation of the Plan as may be necessary and appropriate;

7.    Any motion to modify the Plan in accordance with Section 1127 of the Code, or to correct any defect, cure any omission, or reconcile any inconsistency in the Plan, Disclosure Statement, or any Confirmation Order as may be necessary to carry out the purposes of the Plan;

8.    All Claims arising from the rejection of any executory contract or lease;

9.    Such other matters as may be provided for in the Code or the Plan;

10. To protect the property of the Estate from adverse claims or interference inconsistent with the Plan; and

11. To ensure that Distributions are accomplished, as provided herein, and to resolve any dispute concerning the right of any person to a Distribution hereunder, under applicable law, or under a contract or agreement.

E. Headings.

Article, Section, and Paragraph headings used herein are for convenience only and shall not affect the interpretation or construction of any provision of this Plan.

F. Cramdown.

Debtors reserve the right to seek confirmation of the Plan under Section 1129(b) of the Code.

G. Regulatory Approval and Retirement Plans.

It will not be necessary for the Debtor to await any required regulatory approvals from agencies or departments of the United States to consummate the Plan. The Plan will be implemented pursuant to its provisions and the provisions of the Code. The Debtor does not have any retirement plans.

H. Notices.

All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally, by facsimile transmission, or mailed by United States Mail to the following:

To Debtor:

KA and KM Development, Inc.
Vinod Kalidas
8865 Commodity Circle, Suite 14B
Orlando, FL 32819

With copies to:

Debtor's Counsel:

Elizabeth A.Green, Esquire
Jimmy D. Parrish, Esquire
Baker & Hostetler, LLP
200 S. Orange Avenue
SunTrust Center, Suite 2300
Orlando, Florida 32801-3432

I.      Manner of Payment.

Any payment of Cash made under this Plan may be made either by check drawn on an account of the Reorganized Debtor, by wire transfer, or by automated clearing house transfer from a domestic bank, at the option of the Reorganized Debtor.

J.      Compliance with Tax Requirements.

In connection with this Plan, to the extent applicable, the Reorganized Debtor in making distributions under this Plan shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit and all Distributions, pursuant to this Plan, shall be subject to such withholding and reporting requirements. The Reorganized Debtor may withhold the entire Distribution due to any Holder of an Allowed Claim until such time as such Holder provides to the Reorganized Debtor, the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Reorganized Debtor to the appropriate authority. If the Holder of an Allowed Claim fails to provide to the Reorganized Debtor the information necessary to comply with any withholding requirements of any governmental unit within six (6) months after the date of first notification by the Reorganized Debtor to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's distribution shall be

treated as an undeliverable distribution in accordance with the below. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

K.    <u>Transmittal of Distributions to Parties Entitled Thereto.</u>

All distributions by check shall be deemed made at the time such check is duly deposited in the United States mail, postage prepaid. All distributions by wire transfer shall be deemed made as of the date the Federal Reserve or other wire transfer is made. Except as otherwise agreed with the Holder of an Allowed Claim or as provided in this Plan, any property to be distributed on account of an Allowed Claim shall be distributed by mail upon compliance by the Holder with the provisions of this Plan to: (i) its address set forth in its Proof of Claim; (ii) the latest mailing address filed for the Holder of an Allowed Claim entitled to a distribution; (iii) the latest mailing address filed for a Holder of a filed power of attorney designated by the Holder of such Allowed Claim to receive distributions; (iv) the latest mailing address filed for the Holder's transferee as identified in a filed notice served on the Reorganized Debtor pursuant to Bankruptcy Rule 3001(e); or (iv) if no such mailing address has been filed, the mailing address reflected on the Schedules or in the Debtor's books and records.

L.    <u>Distribution of Unclaimed Property.</u>

Except as otherwise provided in this Plan, any property (Cash or otherwise) to be distributed under this Plan, which is unclaimed after six months following the relevant distribution date shall be forfeited and such distribution together with all interest earned thereon shall become an Asset of the Reorganized Debtor.

M.    <u>Fractional Cents; Multiple Distributions.</u>

Notwithstanding any other provisions of this Plan to the contrary, no payment of fractional cents will be made under this Plan. Cash will be issued to Holders entitled to receive a

Distribution of Cash in whole cents (rounded to the nearest whole cent). To the extent that cash remains undistributed as a result of rounding of such fractions, such cash shall be treated as Unclaimed Property under the Plan.

N.  <u>Revocation and Withdrawal of this Plan.</u>

The Debtor reserves the right to withdraw this Plan at any time before entry of the Confirmation Order. If (i) the Debtor revokes and withdraws this Plan, (ii) the Confirmation Order is not entered, (iii) the Effective Date does not occur, (iv) this Plan is not substantially consummated, or (v) the Confirmation Order is reversed or revoked, then this Plan shall be deemed null and void.

O.  <u>Modification of Plan.</u>

The Debtor may amend or modify this Plan in accordance with §1127(b) of the Bankruptcy Code, or remedy a defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

**RESPECTFULLY SUBMITTED** this 25th day of February 2010.

COUNSEL FOR KA AND KM
DEVELOPMENT, INC.


/s/ Elizabeth A. Green
Elizabeth A. Green, Esquire
Florida Bar No. 0600547
Jimmy D. Parrish, Esquire
Florida Bar No. 0526401
BAKER & HOSTETLER, LLP
200 S. Orange Avenue
SunTrust Center, Suite 2300
Orlando, Florida 32801-3432
Telephone: (407) 649-4000
Facsimile: (407) 841-0168
Email: jparrish@bakerlaw.com
Email: egreen@bakerlaw.com